Vivian Anderson SMITH

v.

MONTGOMERY COUNTY,
MARYLAND, et al.

Civ. No. Y–82–1323.

United States District Court,
D. Maryland.

Oct. 26, 1983.

Robert H. Symonds, Lanham, Md., and Ellen J. Flannery, Washington, D.C., for plaintiff; Arthur B. Spitzer, Elizabeth Symonds, Washington, D.C., and Edward L. Genn, Rockville, Md., of counsel.

Robert G. Tobin, Jr., Rockville, Md., for defendants.

## MEMORANDUM OPINION AND ORDER

JOSEPH H. YOUNG, District Judge.

Plaintiff Vivian Smith brought this suit pursuant to 42 U.S.C. § 1983 on behalf of herself and as a purported representative of two classes of similarly situated persons alleging that the Montgomery County Detention Center's policy of indiscriminately strip searching all persons detained at the Center violates the Fourth Amendment. Plaintiff and the classes she purports to represent seek declaratory and injunctive relief and damages. Named as defendants are Paul McGuckian, County Attorney of Montgomery County; Charles Gilchrist, County Executive of Montgomery County; Gary Blake, Director of the Department of Correction and Rehabilitation of Montgomery County; Jane Doe,[1] a guard at the Center who conducted a strip search of plaintiff; and Montgomery County.[2] All the individual defendants are being sued in both their individual and official capacities.

This case was previously assigned to Judge Jones of this District. In a Memorandum and Order dated September 17, 1982, Judge Jones summarized the relevant facts:

Vivian Smith was arrested at her home at about 10:00 p.m. on November 12, 1981 for contempt of court, in failing to appear in the Circuit Court for Montgomery County on October 28, 1981 in connection with a child support action originating in Essex County, New Jersey. She was taken to the Rockville District police station, where she was photographed and an arrest report was filed. She was then taken, at about 11:40 p.m. to the Montgomery County Detention Center (MCDC), where she remained overnight....

Upon arrival at the detention center, plaintiff was taken to the women's receiving and discharge area, an open room approximately 15 feet by 20 feet containing a shower, desk and one cell normally used as a holding cell. She was ordered to, and did, remove all her clothing. She then had to move her arms, open her mouth, bend over and squat, while a female correctional officer conducted a visual inspection of her body, including her oral, vaginal and anal cavities. This search took place in the presence of another female detainee, who was in the cell in the room. No weapon or contraband was found. Ms. Smith then show-

1. Discovery has revealed that the guard who conducted the strip search of plaintiff was Denise Dodson. Plaintiff will be granted leave to amend her complaint to substitute Denise Dodson for Jane Doe.

2. Bernard Crooke, Montgomery County Police Chief, was also named as a defendant in the complaint. Subsequently, however, the parties have entered into a stipulation dismissing all claims against Crooke.

ered and was placed in the holding cell with the other female detainee overnight.

All persons held or detained in the MCDC undergo the same preliminary procedures. They are made to remove their clothing, which is checked for weapons and contraband, and their body cavities—mouth, nose, ears, anus, and genital area—are visually inspected. Areas such as the soles of the feet, armpits and hair are also inspected. The guard performing the search does not normally touch the detainee in the inspection.

According to Gary Blake, Montgomery County Director of Correction and Rehabilitation, strip searches are normally performed in private, although the MCDC written policy does not state that they must or should be.... The strip search policy applies to all detainees, regardless of whether there is probable cause to believe they may be concealing weapons or contraband, regardless of where they are housed and regardless of whether they are being held overnight pending a court appearance the next day or for a longer period.

*Smith v. Montgomery County,* 547 F.Supp. 592, 593–95 (D.Md.1982) (captions and footnotes omitted). In the same Memorandum and Order, Judge Jones granted plaintiff's motion for a preliminary injunction. The preliminary injunction states:

That defendants are enjoined, during the pendency of this litigation, from permitting, promulgating a policy permitting, and enforcing the present policy permitting, a visual strip search of a temporary detainee at the Montgomery County Detention Center, as defined herein, except upon probable cause to believe such detainee has weapons or contraband concealed on his or her person. Defendants are likewise enjoined from permitting, promulgating a policy permitting, and enforcing the present policy to the extent that it permits the

conducting of visual searches other than in private.

By letter dated August 3, 1983, this Court advised counsel that marginal orders had been entered: 1) denying plaintiff's motion for partial summary judgment; 2) dissolving the preliminary injunction; 3) declaring plaintiff's motion for compliance with the preliminary injunction moot; 4) granting in part and denying in part defendant McGuckian's motion to dismiss and alternative motion for summary judgment; 5) denying defendants' motion to dismiss and alternative motion for summary judgment; and 6) granting plaintiff's second motion for order compelling discovery.[3] This Memorandum and Order sets forth the reasons for these marginal orders and resolves the motion for class certification.

## PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

In her motion for partial summary judgment, plaintiff seeks a declaration that the Center's strip search policy is unconstitutional and an order permanently enjoining defendants from strip searching short-term detainees absent probable cause to believe that they are concealing weapons or contraband and from strip searching short-term detainees other than in private. Because, as discussed below, plaintiff lacks standing to seek either declaratory or injunctive relief, this motion must be denied.

■ To invoke the jurisdiction of a federal court, a plaintiff must satisfy the threshold requirement of an actual "case or controversy" imposed by Article III of the Constitution. *Los Angeles v. Lyons,* —— U.S. ——, ——, 103 S.Ct. 1660, 1665, 75 L.Ed.2d 675 (1983); *Flast v. Cohen,* 392 U.S. 83, 94–101, 88 S.Ct. 1942, 1949–1953, 20 L.Ed.2d 947. In order to satisfy the case or controversy requirement, a plaintiff must demonstrate "such a personal stake in the outcome of the controversy as to assure that concrete adverseness which sharpens the presentation of issues upon which the court so largely depends..."

---

**3.** In the August 3, 1983 letter, the Court reserved ruling on plaintiff's motion for class certification, plaintiff's supplemental motion for order compelling discovery and defendant's motion for a protective order.

*Baker v. Carr*, 369 U.S. 186, 204, 82 S.Ct. 691, 703, 7 L.Ed.2d 663 (1962). In a series of recent cases the Supreme Court has elaborated on the requisite personal stake required to assert a claim for injunctive relief. *Lyons, supra; Rizzo v. Goode*, 423 U.S. 362, 96 S.Ct. 598, 46 L.Ed.2d 561 (1976); *O'Shea v. Littleton*, 414 U.S. 488, 94 S.Ct. 669, 38 L.Ed.2d 674 (1974). "The plaintiff must show that he 'has sustained or is immediately in danger of sustaining some direct injury' as the result of the challenged official conduct *and* the injury or threat of injury must be both 'real and immediate,' not 'conjectural' or 'hypothetical.'" *Lyons,* —— U.S. at ——, 103 S.Ct. at 1665 (emphasis added). In *Lyons,* the Court reaffirmed the statement previously made in both *Rizzo* and *O'Shea* that "[p]ast exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief ... if unaccompanied by any continuing, present adverse effects." —— U.S. at ——, 103 S.Ct. at 1665. The *Lyons* Court defined "continuing, present adverse effects" as a "real and immediate threat of repeated injury..." *Id.* Moreover, "speculation is insufficient to establish the existence of a present live controversy." —— U.S. at ——, 103 S.Ct. at 1666. Standing to seek injunctive relief, therefore, depends on whether plaintiff is likely to suffer future injury as a result of the conduct sought to be enjoined.

■ Based on these principles, the Court in *Lyons* held that a plaintiff who had sustained injury as a result of a chokehold applied by a police officer did not have standing to enjoin the use of chokeholds despite the fact that he had standing to sue for damages. The Court stated that because the plaintiff did not credibly allege that there was a real and immediate threat that he would be the victim of another chokehold, the plaintiff could not sue to enjoin the use of chokeholds. *Lyons* compels the conclusion that plaintiff in the case at bar lacks standing to seek injunctive relief against the Center's strip search policy. Plaintiff does not allege, nor could she credibly allege, that she will be arrested in the future and strip searched without probable cause to believe she is carrying weapons or contraband.

Plaintiff contends that the instant case is distinguishable from *Lyons* on the ground that the plaintiff in *Lyons,* unlike the plaintiff in the instant case, sought to enjoin conduct which was not officially authorized by the governmental defendant. This contention is misplaced. Although the *Lyons* Court did state that the plaintiff in that case did not have standing to seek injunctive relief because the conduct sought to be enjoined was not authorized by the governmental defendant, the Court made clear that failure to credibly allege threat of future injury, regardless of whether that injury would result from the exercise of official governmental policy, precluded a plaintiff from seeking injunctive relief. In other words, the likelihood of future injury is an inquiry separate and apart from the inquiry of whether or not the conduct sought to be enjoined is authorized by official governmental policy. In § 1983 cases against governmental entities, such as the instant case and *Lyons,* both inquiries must be answered in the affirmative. A plaintiff must first show that he is likely to sustain injury in the future from the conduct sought to be enjoined. Only after plaintiff has credibly alleged threat of future injury does a court concern itself with whether the conduct sought to be enjoined was based on official governmental policy. In the case at bar, plaintiff's failure to credibly allege threat of future injury from the Center's strip search policy precludes her from seeking to enjoin that policy even though defendants concede that the policy is officially authorized by Montgomery County.

The instant case is readily distinguishable from *Kolender v. Lawson,* —— U.S. ——, 103 S.Ct. 1855, 75 L.Ed.2d 903 (1983), where the Court in a case decided after *Lyons* held that a plaintiff had standing to seek injunctive relief. *Lawson* sought to enjoin the application of a California criminal statute pursuant to which he had been arrested or detained approximately fifteen times. Thus, the Court stated that "there

is a 'credible threat' that Lawson might be detained again under" the statute sufficient to permit him to seek injunctive relief. —— U.S. at ——, n. 3, 103 S.Ct. at 1857, n. 3.

■ Plaintiff also lacks standing to seek declaratory relief. The Declaratory Judgment Act is expressly limited to cases involving an "actual controversy." 28 U.S.C. § 2201. In *Golden v. Zwickler,* 394 U.S. 103, 89 S.Ct. 956, 22 L.Ed.2d 113 (1969), the Court held that a congressman who had once been convicted under a statute lacked standing to seek a declaration about the constitutionality of that statute. The Court said that since it was "wholly conjectural" that the congressman would again be prosecuted under the statute, the congressman could not establish threat of injury of "sufficient immediacy and reality" to seek a declaration on the constitutionality of the statute. 394 U.S. at 109, 89 S.Ct. at 960. Significantly, *Golden* was cited with approval in *Lyons* as "a case arising in an analogous situation" which is "directly apposite." —— U.S. at ——, 103 S.Ct. at 1666.

## DISSOLUTION OF THE PRELIMINARY INJUNCTION

The Court's holding that plaintiff lacks standing to seek injunctive relief requires that the preliminary injunction issued by Judge Jones be dissolved. The Court cautions the defendants that, although they are no longer under court order prohibiting them from engaging in an indiscriminate strip search policy, it would be unwise for them to do so in light of the Court's holding which is discussed *infra* that defendant's indiscriminate strip search policy is unconstitutional. Thus, although defendants are technically free to resume the strip search policy that was in effect prior to the issuance of the preliminary injunction, to do so may subject them to both compensatory and punitive damages.[4]

## PLAINTIFF'S MOTION FOR COMPLIANCE WITH THE PRELIMINARY INJUNCTION

The dissolution of the preliminary injunction moots this motion.

## DEFENDANT McGUCKIAN'S MOTION TO DISMISS AND ALTERNATIVE MOTION FOR SUMMARY JUDGMENT

Defendant McGuckian, the County Attorney of Montgomery County, put forth four reasons in support of his motion to dismiss or, in the alternative, motion for summary judgment. Each of these reasons will be addressed in turn.

■ First, McGuckian contends that he was not personally involved in the alleged deprivation of the constitutional rights of plaintiff. Liability under § 1983 extends only to those persons who are personally involved in the deprivation of the federal rights of other persons. *Vinnedge v. Gibbs,* 550 F.2d 926 (4th Cir.1977). McGuckian, however, acknowledges that he and his staff gave legal opinions to the Center's staff regarding the legality of the Center's strip search policy. Giving legal advice which serves as the basis for actions which violates the rights of others is sufficient personal involvement to support liability under § 1983. *See Donovan v. Reinbold,* 433 F.2d 738 (9th Cir.1970); *Gilbert v. School District,* 485 F.Supp. 505 (D.Colo. 1980). Accordingly, McGuckian's first reason must fail.

■ McGuckian's second reason why the claims against him should be dismissed is that the attorney-client privilege "would prevent proof of communications between defendant McGuckian and other named defendants" and thus plaintiff would not be able to establish any liability against McGuckian. Underlying this reason as well as the defendants' opposition to plaintiff's second motion for an order compelling discovery is defendants' belief that the legal opinions given by McGuckian and his

---

**4.** It should be noted that although the Court is dissolving the preliminary injunction, it has adopted all of the legal analysis in Judge Jones's opinion, in particular footnote 9. The Court

declines to adopt a reasonable suspicion standard for strip searches. *See, e.g., Hunt v. Polk,* 551 F.Supp. 339 (S.D.Iowa, 1982).

staff on the legality of the Center's strip search policy are privileged under the attorney-client privilege. Assuming *arguendo* that the attorney-client privilege attached to the legal opinions by McGuckian and his staff, *see Community Savings and Loan Association v. Federal Home Loan Bank Board*, 68 F.R.D. 378 (E.D.Wis.) (legal opinions based on public information as opposed to confidential information are not privileged), the privilege has been waived by the numerous statements made by the defendants about the legal advice they received on the Center's strip search policy. *See, e.g.,* depositions of defendants Gilchrist and Blake; *see also* defendant McGuckian's Reply Memorandum to Plaintiff's Supplemental Memorandum in Opposition to Defendant McGuckian's Motion to Dismiss and Alternative Motion for Summary Judgment. Consequently, because of defendants' voluntary disclosures about the legal opinions issued by McGuckian and his staff, *see* 8 C. Wright & A. Miller, *Federal Practice and Procedure* 127 (1970), McGuckian's second reason also fails.

■ McGuckian's third reason for seeking to have the claims against him dismissed is that he is absolutely immune from damages under § 1983. However, because McGuckian does not exercise any quasi-judicial authority nor is he engaged in any prosecutorial activities, he is not clothed with absolute immunity under § 1983. *Imbler v. Pachtman*, 424 U.S. 409, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976); *Donovan, supra; Gilbert, supra.*

■ Lastly, McGuckian contends that even if he is not clothed with absolute immunity, the claims against him must be dismissed because he is immune from damages under the defense of qualified immunity. Under the defense of qualified immu-

nity, McGuckian is "shielded from liability insofar as [his] conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). The Supreme Court has stated that, in determining whether a defendant is entitled to qualified immunity, a court must "determine, not only the currently applicable law, but whether that law was clearly established at the time an action occurred." 457 U.S. at 818, 102 S.Ct. at 2739. As previously noted by Judge Jones, *Logan v. Shealy*, 660 F.2d 1007 (4th Cir.1981) "is controlling on the merits" of this case. *Smith*, 547 F.Supp. at 599. In *Logan*, the Fourth Circuit held that an across-the-board policy of strip searching pre-trial detainees violates the Fourth Amendment. The Court concludes that *Logan* is both the currently applicable law as well as the "clearly established law ... of which a reasonable person would have known" on the constitutionality of across-the-board strip search policies such as that employed at the Center as of the date, October 7, 1981, it was decided.[5] Prior to *Logan*, however, it cannot be said that the law on the legality of across-the-board strip search policies was clearly established. *Compare Logan v. Shealy*, 500 F.Supp. 502 (E.D.Va.1980), *rev'd*, 660 F.2d 1007 (4th Cir.1981) *with Tinetti v. Wittke*, 479 F.Supp. 486 (E.D.Wis.1979), *aff'd*, 620 F.2d 160 (7th Cir.1980); *see also Bell v. Wolfish*, 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979). Accordingly, McGuckian is immunized from liability prior to the date *Logan* was decided by the Fourth Circuit, but is precluded from asserting the defense of qualified immunity for any action he took after the Fourth Circuit's decision in *Logan*.

---

5. The Court recognizes that Justice Rehnquist, in his capacity as a Circuit Justice, in staying the Fourth Circuit's mandate in *Logan*, stated that *Logan* was incorrectly decided. *Clements v. Logan*, 454 U.S. 1304, 102 S.Ct. 284, 70 L.Ed.2d 461 (1981). However, the alacrity with which the full Supreme Court vacated the stay entered by Justice Rehnquist, is a strong indication that the full Court believes that *Logan* was correctly decided. *Clements v. Logan*, 454 U.S. 1117, 102 S.Ct. 961, 71 L.Ed.2d 105 (1981) (stay vacated two days after it was entered). In any event, by virtue of the Court's decision to deny certiorari, 455 U.S. 942, 102 S.Ct. 1435, 71 L.Ed.2d 653 (1982), *Logan* is the law in this Circuit and accordingly must be followed by this Court as well as those persons in the states included within the Fourth Circuit.

## DEFENDANTS' MOTION TO DISMISS AND ALTERNATIVE MOTION FOR SUMMARY JUDGMENT

■ In this motion, defendants argue that the entire complaint must be dismissed because the Center's across-the-board strip search policy is constitutional. Defendants argue that the Fourth Circuit's opinion in *Logan* is distinguishable on the grounds that *Logan* only applies to strip searches conducted by law enforcement officers prior to the commitment of arrestees to a detention facility. This argument has previously been rejected by Judge Jones. This Court fully agrees with Judge Jones that *Logan* is controlling on the merits of the instant case. Indeed, squarely faced with the issue of the constitutionality of the Center's indiscriminate strip search policy and failure to conduct strip searches in private raised in this motion, the Court holds that, based on *Logan*, the Center's indiscriminate strip search policy and failure to conduct strip searches in private is unconstitutional. Therefore, defendants' motion must be denied.

## PLAINTIFF'S SECOND MOTION FOR ORDER COMPELLING DISCOVERY

■ In this motion, plaintiff seeks an order compelling defendant McGuckian and one of his staff attorneys to answer questions about the Fourth Circuit's decision in *Logan*. Defendants oppose this motion on the grounds of attorney-client privilege and work product privilege. As previously indicated, any attorney-client privilege that McGuckian and his staff may have been able to assert regarding their legal opinions on the effect of *Logan* has been waived by the statements of the defendants made during the course of this litigation. In addition, the work product privilege is inapplicable since the defendants have not shown that the legal opinions sought to be discovered were given in contemplation of litigation. *See Hickman v. Taylor,* 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947); *Coastal States Gas Corp. v. Department of Energy,* 617 F.2d 854, 864 (D.C.Cir.1980).

## PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

■ Plaintiff moves for certification of two classes, one for purposes of injunctive relief under Fed.R.Civ.P. 23(b)(2), and one for purposes of damages under Fed.R. Civ.P. 23(b)(3). In light of the Court's denial of standing for plaintiff, the Court will deny the motion for a class for injunctive relief and grant the motion for a damages class. However, the class is redefined as follows:

> "All persons who were 'temporary detainees' at the Montgomery County Detention Center ("MCDC") since May 20, 1979, and were strip searched absent probable cause to believe that they possessed either weapons or contraband. The term 'temporary detainees' is defined to include all persons arrested and held for 24 hours or less."

Under Fed.R.Civ.P. 23, a class must meet not only the four prerequisites listed in 23(a), but also the additional prerequisite that the class be ascertainable and identifiable. 7 C. Wright & A. Miller, *Federal Practice and Procedure* 590. Moreover, 23(b)(3) establishes two additional requirements for class certification. As discussed herein, the class defined by the Court meets all of these requirements.

### 1. Definite class

■ The prerequisite of an ascertainable and definable class stems from the concern that "at the time of judgment the individual members of the class will be readily identifiable." *Hammond v. Powell,* 462 F.2d 1053, 1055 (4th Cir.1972). Defendants assert that since MCDC records do not explicitly detail the existence of probable cause or lack thereof, a class defined as those searched without probable cause is too indefinite to support class certification. However, the Court concludes that the existence of probable cause can be determined from MCDC data detailing the nature of the charge, the reason for release from MCDC, and the subsequent history of the detainee.

Plaintiffs have requested the Court to certify a 23(b)(3) class defined as follows: "All persons who were 'temporary detainees' at the Montgomery County Detention Center ("MCDC") since May 20, 1979, and were strip searched absent probable cause to believe that they possessed either weapons or contraband. The term 'temporary detainees' is defined to include all persons arrested and held overnight or for another short period of time *either* (1) prior to an appearance before a judicial officer or (2) after an appearance before a judicial officer and while waiting to be released while bond is posted, a relative comes, or some similar condition of release is satisfied. It does not include 'pretrial detainees,' a term that includes persons who were being held for a matter of weeks or months until trial because they were unable to make bond."

The Court, however, concludes that such a definition sweeps too broadly. It would include persons commingled with the general detention center population while, for example, they were awaiting the posting of bond. Such a result would contradict the Fourth Circuit's ruling in *Logan v. Shealy*, 660 F.2d 1007 (1981). Thus the Court will narrow the class to those held for 24 hours or less. *See generally, Koen v. Long*, 302 F.Supp. 1383, 1389 (E.D.Mo.1969), *aff'd*, 428 F.2d 876 (8th Cir.1970).

### 2. Numerosity

■ As previously observed by this Court, impossibility of joinder is not necessary to meet the numerosity requirement of Rule 23(a). "Rather, difficulty or impracticability of joinder is sufficient." *Smith v. Baltimore & Ohio Railroad Co.*, 473 F.Supp. 572, 581 (D.Md.1979). Defendants have not estimated the number of persons detained for 24 hours or less, however they have stated that since 1979 at least 15,000 persons have been strip searched pursuant to detention center policy. The Court is confident that out of this figure the number who were searched without probable cause is sufficiently large to render joinder impracticable. Indeed, the Fourth Circuit has found 18 to be a sufficient number of persons to permit class certification. *Cypress v. Newport News General and Nonsectarian Hospital*, 375 F.2d 648 (4th Cir.1967).

### 3. Commonality

■ Rule 23 also requires that one or more issues of law and fact are common to members of the class. In light of this Court's determination that defendant's indiscriminate strip search policy was unconstitutional, this action clearly raises a common question of law as to defendants' liability.

### 4. Typicality

■ The typicality requirement of Rule 23 addresses whether the representatives' claims and interests are in fact consistent and harmonious with the rest of the class. *Smith v. Baltimore & Ohio Railroad Co.*, 473 F.Supp. at 58. In this case the basic claims of the class members are identical as to the legal theory of liability as well as to the underlying facts. That members of the class may make additional claims based on privacy concerns for strip searches conducted in non-public places does not render the claims atypical. As this Court has already observed: "Factual differences will not necessarily render a claim atypical if the representative's claim arises from the same event, practice or course of conduct that gives rise to the claims of the class, and is based on the same legal theory." *Id.*

### 5. Adequacy of Representation

■ Rule 23(a) also requires that the representative party demonstrate that she will fairly and adequately protect the interests of the class. This requirement addresses the legal capacity of plaintiff's counsel to represent the class as well as to the representative's own ability to pursue a course of conduct beneficial to the absent class members. *Id.* In determining whether a proposed representative meets this standard, courts look to such factors as whether the representative's interests are

sufficiently identical to those of the absent class members so that she will diligently and vigorously pursue the claims of all members of the class; whether the representative's counsel is competent to conduct the litigation; and whether there is an antagonism of interest between the named plaintiff and members of the class. *See generally* 3B J. Moore, *Moore's Federal Practice* ¶ 23.07[1]–[5] (2 ed. 1982). The named plaintiff in this case clearly satisfies the adequacy of representation requirement of Rule 23: her interests are coextensive with, not antagonistic to, those of the class, and her counsel have vigorously and diligently pursued her claim.

### 6. Class Certification Pursuant to Rule 23(b)(3)

 Besides the four prerequisites enumerated in 23(a), a damage class must also satisfy two additional requirements listed in 23(b)(3): "that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." "The fundamental question to decide is whether the group aspiring to class status is seeking to remedy a common legal grievance." *Bennett v. Gravelle*, 323 F.Supp. 203, 218 (D.Md.1971). As previously stated, this case presents a common question of law which is predominant over any additional individual claims. Moreover, resolution of the liability and damages issues within the context of a class action is far more efficient than individual prosecution of damages actions. A class action is also the fairest means to settle this controversy since it is unlikely that most class members would pursue these claims on their own. Thus, because all the requirements of Rule 23 have been satisfied, the Court finds the certification of a class for the purpose of both damages and liability entirely appropriate.

### 7. Notice

 Rule 23(c)(2) requires individual notice to class members who can be identified with reasonable effort. Pursuant to these notice provisions the Court directs defendants to send notice to all persons detained at MCDC for 24 hours or less since May 20, 1979. Notice shall be made by first class mail to each person within the group identified above, and directed to the last known address. Defendants shall also publish notice once a week for 3 weeks in local newspapers in Montgomery County, counties contingent to Montgomery County (*i.e.*, Prince Georges, Fairfax, Howard, and Frederick), and the District of Columbia.

### 8. Scheduling

To streamline further litigation in this case, the Court directs the parties to adhere to the following schedule:

1. Within thirty days of receipt of this Order, defendants shall complete the mailing and publication of notice. Once this is completed, defendants shall file with the Court a list of the names and addresses of all detainees to whom notice was mailed. The Court will seal this list.

2. Within thirty days from the date of completion of notice under the preceding paragraph, members of the class must notify defendants that they wish to be included within the suit. This "opt-in" provision will enable the Court and the parties to determine the scope of the litigation at an early stage. *See Philadelphia Electric v. Anaconda American Brass Co.*, 43 F.R.D. 452, 459 (E.D.Pa.1968).

3. Upon receipt of all responses, defendants will supply this Court with a list of the names and addresses of those persons who have responded. The Court will then disclose this list to plaintiff under a protective order directing that disclosure is for the limited purposes of this litigation and that no disclosure shall be made to any third parties.

4. Within thirty days from the last day upon which responses will be accepted defendants must establish whether probable cause existed for the search of any particular detainee. The Court allocates the burden of proof for probable cause to defend-

ants since the Court concludes that it is more likely than not that probable cause did not exist. Moreover, fairness considerations dictate this allocation since the very data which will prove the existence of probable cause is in defendants' control. *See generally* F. James & G. Hazard, *Civil Procedures* § 7.9 (2d ed. 1977). This burden should not prove particularly onerous to the defendants. Once they introduce evidence raising a genuine issue of fact as to the existence of probable cause, the burden will shift to plaintiff to rebut this evidence. *See Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1980) (allocation of burden in Title VII actions). Plaintiffs will have thirty days from the date by which probable cause must be shown for rebuttal. Where there is a genuine dispute as to the existence of probable cause, the Court will hold a hearing.

5. The class members remaining at the end of the thirty days for rebuttal will constitute the damages class.

## PLAINTIFF'S MOTION TO COMPEL DISCOVERY OF NAMES AND DEFENDANTS' MOTION FOR PROTECTIVE ORDER

█ Plaintiff moves to compel discovery of the name of the detainee who was present during the strip search of plaintiff as well as the names of other temporary detainees who have been strip searched without probable cause. Defendants move for a protective order for these names. The Court finds that defendants should disclose the name of the co-detainee directly to plaintiff. In reviewing the statutes and provisions cited by defendants, the Court finds that contrary to defendants' assertions, they do not prohibit discovery. The co-detainee is obviously a material witness with respect to defendants' liability for conducting the strip search in a non-public place. The Court, however, instructs plaintiff that the name is disclosed for the limited purposes of this litigation and that it cannot be disclosed to any third party. In light of the above notice provisions, the motion to compel discovery of the names of the other temporary detainees is moot. As already stated, plaintiffs will receive the names and addresses of those responding to defendants' notice.

## PLAINTIFF'S MOTION FOR ATTORNEY FEES UNDER FED.R.CIV.P. 37(a)(4)

█ The Court denies plaintiff's motion for reasonable costs, including attorneys' fees, incurred in obtaining orders compelling discovery. Rule 37(a)(4) authorizes the award of reasonable costs to the party moving to compel discovery unless the court finds that the "opposition was substantially justified." Opposition to a motion is " 'substantially justified' if the motion raised an issue about which reasonable men could genuinely differ on whether a party was bound to comply with a discovery rule." 8 C. Wright & A. Miller, *Federal Practice and Procedure* 790 (1970). As defendants' subsequent motion for a protective order demonstrates, there were significant privacy grounds for objecting to disclosure of the detainees' names. Moreover, it was not unreasonable for defendants to assert the attorney-client privilege as to legal opinions of defendant McGuckian and his staff. In short, it cannot be said that defendants acted in bad faith in failing to comply. *See Canron, Inc. v. Plasser American Corp.*, 474 F.Supp. 1010 (D.C.Va.1978), *aff'd*, 609 F.2d 1075 (4th Cir.1979), *cert. denied*, 446 U.S. 965, 100 S.Ct. 2942, 64 L.Ed.2d 824. Thus, the Court finds this to be an inappropriate case for the award of attorneys' fees.

Accordingly, for the reasons stated herein, it is this 26th day of October, 1983, by the United States District Court for the District of Maryland, ORDERED:

1. That plaintiff's motion for partial summary judgment BE, and the same IS, hereby DENIED;

2. That plaintiff's motion for compliance BE, and the same IS, hereby MOOT;

3. That defendant McGuckian's motion to dismiss or, in the alternative, for summary judgment BE, and the same IS, here-

by GRANTED in part and DENIED in part;

4. That defendant's motion to dismiss or, in the alternative, for summary judgment BE, and the same IS, hereby DENIED;

5. That plaintiff's motion to compel discovery of legal opinions BE, and the same IS, hereby GRANTED;

6. That plaintiff's motion for class certification BE, and the same IS, hereby DENIED as to a 23(b)(2) class for injunctive relief;

7. That plaintiff's motion for class certification BE, and the same IS, hereby GRANTED as to a 23(b)(3) damages class defined as follows:

"All persons who were 'temporary detainees' at the Montgomery County Detention Center ("MCDC") since May 20, 1979, and were strip searched absent probable cause to believe that they possessed either weapons or contraband. The term 'temporary detainees' is defined to include all persons arrested and held for 24 hours or less."

8. That defendants shall mail notices in accordance with this Opinion;

9. That plaintiff's motion to compel discovery BE, and the same IS, hereby GRANTED as to the name of the co-detainee;

10. That plaintiff's motion to compel discovery BE, and the same IS, hereby MOOT as to the names of temporary detainees;

11. That defendant's motion for a protective order BE, and the same IS, hereby GRANTED as to the name of the co-detainee;

12. That plaintiff's motion for attorneys fees BE, and the same IS, hereby DENIED; and

13. That the time for the parties to file an appeal, if any, shall be determined as of the date of this Order.