**Vivian Anderson SMITH, et al.**

v.

**MONTGOMERY COUNTY, MARYLAND, et al.**

**Civ. No. Y–82–1323.**

United States District Court, D. Maryland.

Oct. 9, 1987.

Clausen Ely, Jr., Ellen J. Flannery, Timothy J. O'Rourke, Washington, D.C., for plaintiffs; Arthur B. Spitzer, Washington, D.C., and Edward L. Genn, Rockville, Md., of counsel.

Robert G. Tobin, Jr., Rockville, Md., Carole A. Jeffries, and Susanne Levin, Silver Spring, Md., for defendants.

## MEMORANDUM

JOSEPH H. YOUNG, District Judge.

In May, 1982, Vivian Smith brought this suit pursuant to 42 U.S.C. § 1983 alleging

that the policy of Montgomery County, Maryland and, in particular, of the Montgomery County Detention Center ("MCDC") which required strip searching of all temporary detainees violated the Fourth Amendment. Pursuant to this policy, adopted May 20, 1979, Ms. Smith had been subjected to a non-private visual body cavity search as a matter of MCDC's routine practice for persons detained temporarily prior to their appearance before a judge. In a Memorandum and Order dated September 13, 1982, Judge Jones of this District, to whom this case was initially assigned, agreed with plaintiff, finding that defendants' indiscriminate policy was overbroad.

> The strip search policy applies to all detainees, regardless of whether there is probable cause to believe they may be concealing weapons or contraband, regardless of where they are housed and regardless of whether they are being held overnight pending a court appearance the next day or for a longer period.

*Smith v. Montgomery County*, 547 F.Supp. 592, 595 (D.Md.1982) ("*Smith I*"). Judge Jones then granted plaintiff's motion for preliminary injunction.

> Defendants will be enjoined from permitting, promulgating a policy permitting, or enforcing a policy permitting the visual strip search of a temporary detainee, as that term has been defined herein, except upon probable cause to believe such detainee has weapons or contraband concealed on his or her person and from permitting, promulgating a policy permitting or enforcing a policy permitting the conducting of such searches other than in private.

*Id.* at 599.[1]

After the case was reassigned, this Court's resolution of a number of pending motions effectively converted what had been a case for injunctive relief into a case regarding damages for the unconstitutional strip searches of certain temporary detainees. In a Memorandum and Order dated October 26, 1983, this Court explained its reasons for dissolving the preliminary injunction and for certifying a damages class of plaintiffs under Fed.R.Civ.P. 23(b)(3) rather than a plaintiff class for injunctive relief: "plaintiff's failure to credibly allege threat of future injury from the Center's strip search policy precludes her from seeking to enjoin that policy even though defendants concede that the policy is officially authorized by Montgomery County." *Smith v. Montgomery County*, 573 F.Supp. 604, 608 (D.Md.1983) ("*Smith II*"). This Court then defined the "opt-in" retrospective damages class as follows:

> All persons who were 'temporary detainees' at the Montgomery County Detention Center ("MCDC") since May 20, 1979, and were strip searched absent probable cause to believe that they possessed either weapons or contraband. The term 'temporary detainees' is defined to include all persons arrested and held for 24 hours or less.

*Id.* at 611. Defendants were directed "to send notice to all persons detained at MCDC for 24 hours or less since May 20, 1979" by mail and by publication in area newspapers, and were directed to maintain and file with the Court a list of detainees to whom notice was mailed and a list of those persons who responded. *Id.* at 613. It was hoped that "[t]his 'opt-in' provision will enable the Court and the parties to determine the scope of the litigation at an early stage." *Id.*

Since the October 26, 1983 decision,[2] this Court has ruled that subsequent Supreme Court decisions cited by defendants "d[o] not require the reversal or modification of its prior [1983] holding that the detention center's [indiscriminate] strip search policy is unconstitutional." *Smith v. Montgomery County*, 607 F.Supp. 1303, 1306 (D.Md.

---

1. Defendants include officials of the county's government and the Montgomery County Police Department. Thus, the injunction pertained to strip searches by both the detention center and by the police department. The plaintiff class later certified, however, includes only persons detained at MCDC. *See infra* note 12.

2. Appeals from this Court's decision were dismissed for lack of appellate jurisdiction. *Smith v. Montgomery County*, 740 F.2d 963 (4th Cir. 1984) (unpublished opinion) (appeal dismissed as "premature").

1985) (*"Smith III"*). Later, the Court modified the class definition to reflect the adoption of a standard requiring "reasonable suspicion" of temporary detainees' possession of weapons or contraband, rather than the stricter "probable cause" standard, to justify strip searching. *Smith v. Montgomery County*, 643 F.Supp. 435, 437 (D.Md.1986) (*"Smith IV"*). Most recently, this Court vacated the award of nominal damages and granted plaintiffs' request for a jury trial on their claims for compensatory and punitive damages by letter to counsel dated January 27, 1987.

Nearly four years after the plaintiff class was certified, and after lengthy class notice and response procedures, both plaintiffs and defendants now seek to delay trial on damages in an attempt to overhaul the scope of the class. First, defendants demand that each individual responding late to notice of the class action be required to provide the Court with affidavits and supporting documents to show good cause for untimely response. Second, plaintiffs argue that all persons temporarily detained at MCDC from May 20, 1979 "to the present" are potential class members and that persons detained after this Court's October 26, 1983 decision must receive notice and an opportunity to prove damages. The Court believes neither position is valid.

UNTIMELY RESPONDERS

 A district court has discretion to make appropriate orders governing procedural matters in class actions. Fed.R. Civ.P. 23(d). Furthermore, it is well established that "the issue of manageability of a proposed class action is always a matter of 'justifiable and serious' concern for the trial court and peculiarly within its discretion.... And this is particularly true in actions governed by Rule 23(b)(3)." *Windham v. American Brands, Inc.*, 565 F.2d 59, 65 (4th Cir.1977), *cert. denied*, 435 U.S. 968, 98 S.Ct. 1605, 56 L.Ed.2d 58 (1978). In managing this class action, this Court has pressed the parties to resolve their differ-

ences regarding the scope of the plaintiff class so that a final list of class members could be prepared for trial on the damages issue. Now presented with disputes regarding the inclusion of individuals responding late to notice of the class action, the Court finds that the plaintiff class now consists of all individuals who filed timely responses, and all individuals who filed untimely responses to date and with whom plaintiffs' counsel has maintained contact.

By letter to counsel dated January 27, 1987, the Court directed the parties to finalize the class membership lists. "Plaintiffs may make an individualized showing that certain individuals had good cause for late filing. This should be in the form of an affidavit and should be filed within thirty days." Plaintiffs' counsel complied with the Court's directions by their "Declaration," executed February 26, 1987, which categorized the late responders, submitted individualized showings of good cause for their untimely responses, and listed other corrections to the class membership lists filed by defendants in January and February, 1984, and in March, 1986. Plaintiffs also requested the inclusion of individuals who have not contacted plaintiffs' counsel to provide reasons for their untimely responses.

Defendants, in their response to plaintiffs' declaration, do not oppose the correction of inadvertent omissions in the class membership lists, nor do they oppose the addition of two individuals who have pursued identical claims in independent suits in this district.[3] Defendants do oppose the inclusion of any persons whose responses to notice were untimely, urging this Court to require affidavits and supporting documentation to be proferred by each individual to establish good cause for their late response. Additionally, defendants oppose the inclusion of "any person who has failed to provide any reason for having failed to file a timely response." Defendants' Re-

---

**3.** By Consent Order dated June 14, 1987, Judge Harvey of this District dismissed without prejudice Civil Action H–82–2790 and ordered that the plaintiff in that action be included in the class of potential claimants in the class action in

this Court. However, the plaintiff in a second independent civil action, Y–82–194, has requested exclusion from this retrospective damages class by letter from counsel dated September 4, 1987.

sponse at 9. Subsequently, defendants and plaintiffs agreed upon a list of persons who have responded to notice "at any time and/or in any manner ... to Defendants' Notice of Class Certification." Affidavit of Defendants' Counsel dated May 28, 1987. The list attached thereto, which was filed with the clerk under seal, now forms the basis of reference for discussion of class membership.[4]

The federal rules provide that, after certifying a class, the court must direct to potential class members "the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed.R.Civ.P. 23(c)(2). Defendants have provided such notice.[5] Those individuals who have responded to notice and have maintained contact comprise the set of interested parties. Individuals who responded to defendants' notice but who later, through no fault of defendants, have not responded to plaintiffs' attempt to contact them, are excluded from the class by their own selection. Defendants must, of course, maintain updated addresses for class members who notify defendants' counsel of their change of address, but defendants have no duty to continually update addresses for plaintiffs' convenience. This is especially true in this "opt-in" class action: unlike the "opt-out" class actions, or those maintained under Rule 23(b)(2) where no individual notice is required, *res judicata* will apply only to individuals affirming their desire to be included in this action, and the action proceeds in class

form simply for reasons of judicial economy. *See, e.g., Kyriaza v. Western Electric Company,* 647 F.2d 388 (3rd Cir.1981) ("opt-in" procedure did not unduly limit defendant's liability to class). Thus, to achieve an identifiable and interested class of plaintiffs, the Court will exclude those persons who, as of the date of this Memorandum and Order, have not contacted plaintiffs' counsel to supply information requested by this Court regarding good cause for untimely response to notice.

The information supplied in the Declaration of Plaintiffs' Counsel, executed pursuant to 28 U.S.C. § 1746, satisfies the Court's request for "an affidavit" supporting good cause for untimely responses.[6] The plaintiff class shall include each individual from whom a specific reason for late response was received. Plaintiff counsel's declaration as to the facts surrounding each untimely response will be taken as true. This is not a troubling decision given the defendants' delay in assuring complete and accurate individual notice.[7] Moreover, there is no prejudice to defendants, considering that the non-preclusive nature of this "opt-in" class would allow independent actions for damages by such persons excluded for failure to respond on time. Further, the untimeliness of individuals' responses does not affect the substance of their claims which form the basis of their right to membership in the class. Finally, defendants still have ample time to pursue discovery as to the members of this small subset of the class. The Court extends membership to all potential class members

---

**4.** All documents identifying individual class members have been filed under seal pursuant to the Court's Order of February 14, 1983. Thus, this Memorandum and Order identifies individuals by reference to the characteristics of the group to which they belong.

**5.** Individual notices were mailed to the last known addresses of potential class members on November 11, 1983. On November 26, 1985, and December 12, 1985, a second notice was sent to individuals whose first notices were returned as undeliverable. The addresses used for the second notice were updated from the files of the Motor Vehicle Administrations of Maryland, Virginia, and the District of Columbia as of November, 1985. *See* letters to Court from defendants' counsel dated November 18,

1985, January 15, 1986, and August 3, 1987. *See infra* note 8.

**6.** Each of the reasons listed for individuals's late responses to notice appears to constitute "good cause." Nearly all of the late responders asserted delay in receiving notice because of a change in address. *See* Declaration of Plaintiffs' Counsel, particularly Exhibits B and C.

**7.** Defendants' second notice to potential class members occurred two years after the first notice. *See supra* note 5. *See also* letter to Court from defendants' counsel dated September 17, 1985 (informing the Court that updated addresses had been in defendants' possession but had never been used for 18 months).

discussed in the Declaration of Plaintiffs' Counsel, except those persons listed in Exhibits D and E attached thereto who have not, to date, contacted either plaintiffs' or defendants' counsel.

## CLASS CLOSING

■ Plaintiffs have moved this Court for an Order directing notice to "additional potential class members" not already given notice.[8] In their Memorandum, plaintiffs urge this Court to consider its definition of the plaintiff class to be "open-ended" because "no cut-off date was established by the Court's initial Class Certification Order...." Plaintiffs' Memorandum at 2. Thus, plaintiffs suggest that the class must remain open "to the present," and argue that "open-ended" class membership is appropriate because "defendants have not been enjoined since October 26, 1983, from conducting unlawful strip searches at the MCDC...." *Id.* at 6. In addition, plaintiffs allege that "even under the preliminary injunction [effective from September 13, 1982 until dissolution on October 26, 1983], defendants continue to conduct unlawful or potentially unlawful strip searches of temporary detainees." *Id.* Plaintiffs contend that post–1983 detainees are particularly appropriate for inclusion in the damages class and point to this Court's own notation in its October 26, 1983 Memorandum: "although defendants are technically free to resume the strip search policy that was in effect prior to the issuance of the preliminary injunction, to do so may subject them to both compensatory and punitive damages." *Smith II*, 573 F.Supp. at 609. Although such an "open-ended" class membership might seem logical given the denial of prospective injunctive relief, plaintiffs miscontrue the nature of this Court's holding on the merits of this case in an attempt to increase dramatically the size of the plaintiff class. The Court will not sanc-

tion such a radical redefinition of the scope of this action nearly four years after the class was defined.

In *Smith I*, Judge Jones found the defendants' *indiscriminate* strip search policy unconstitutional. This Court has respected those findings as to the policy followed by defendants prior to Judge Jones's preliminary injunction, and has "adopted all of the legal analysis in Judge Jones's opinion...." *Smith II*, 573 F.Supp. at 609, n. 4. *See Smith III*, 607 F.Supp. at 1306 (prior holding not to be modified). Thus, although this Court has changed the standard of conduct to one requiring "reasonable suspicion" before strip searching temporary detainees at MCDC, it did not modify the scope of the initial holding that MCDC's strip search policy was unconstitutional, where the policy was indiscriminate with regard to suspicion of weapons or contraband possession or severity of the offense for which the detainee was suspected or charged.[9] *See Smith IV*. Thus, this Court has, to date, addressed the constitutionality only of the defendants' policy adopted May 20, 1979. Although plaintiffs' counsel have alleged non-compliance before,[10] they have never properly raised the issue by producing some evidence of such violations after September 13, 1982, beyond mere *conclusions* that "defendants have presented no evidence that they are complying" with the Court's declared standards.

Review of Plaintiff's Reply (filed March 16, 1983) to Defendants' Opposition (filed March 4, 1983) to plaintiff Smith's request for an order declaring noncompliance reveals that such speculative assertions were based on negative inferences from the deposition of one of the defendants and was wholly contradicted by defendants' submission of good faith compliance with the in-

---

**8.** Individual notices have been sent to all persons detained at MCDC for twenty-four hours or less from May 10, 1979 to October 28, 1983. *See supra* note 5.

**9.** Defendants may wish to narrow the plaintiff class prior to trial by moving for summary judgment against those persons searched for whom there was "reasonable suspicion" of

weapons or contraband possession, according to the standards discussed in the Court's ruling in *Smith IV*.

**10.** Plaintiff Smith's motion to compel compliance with Judge Jones's preliminary injunction was mooted by this Court's dissolution of the injunction. *See Smith II*, 573 F.Supp. at 609.

junction then in force. Similarly, plaintiffs' most recent motion for additional notice implicitly relies on essentially the same unsupported assertions without giving the Court sufficient basis for a ruling on the merits. *See* Plaintiffs' Memorandum at 7–8. Issues of federalism and the judicial role in supervising defendants' compliance, discussed in Defendants' Opposition, need not be addressed because plaintiffs have not properly raised the issue of the constitutionality of MCDC's policy in force after class certification.

The Court will not include in a class, certified for damages assessment, persons detained under a policy on which there has been no finding as to its constitutionality, and which on its face appears to comply with or exceed this Court's standards.[11] The Court's previous rulings and class certification have addressed the constitutionality of MCDC's indiscriminate policy rather than any policies effective after the issuance of the preliminary injunction. Indeed, the Court ruled that plaintiff Smith lacked standing to challenge defendants' policies prospectively, and the same analysis applies likewise to members of the plaintiff class. *See Smith II*, 573 F.Supp. at 609.

The scope of the plaintiff class has been defined by its function as a "retrospective damages class." *See, e.g., Smith IV*, 643 F.Supp. at 436. Thus, in the place of injunctive protection, which was not necessarily useful to plaintiff Smith, the Court wanted both to deter illegal strip searches and to compensate victims of the May 20, 1979 policy. Although the Court has never identified the "cut-off" date of temporary detentions for which such detainees may claim class membership, it was not intended that class membership remain "open-ended" and hence unresolved until, or even after, trial on the damages issue.[12] The scope of the plaintiff class was limited to those persons strip searched under the policy held unconstitutional by Judge Jones and by this Court. The temporal scope of the plaintiff class first defined on October 26, 1983, has not been altered: "All persons who were 'temporary detainees' at the Montgomery County Detention Center ("MCDC") since May 20, 1979...." *Smith II*, 573 F.Supp. at 611. *See Smith IV*, 643 F.Supp. at 436–37. The class is narrower with respect to the defendants' conduct than the preliminary injunction it replaced,[13] but it covers all persons subjected to MCDC's "indiscriminate" strip search policy adopted May 20, 1979. In the absence of evidence to the contrary, and in light of reassurances of compliance by defendant Montgomery County and its officials, discussed above, the Court will presume for purposes of class definition that the May 20, 1979 policy was discontinued upon issuance of the prelimination injunction and has been replaced by a policy complying with this Court's standards. However, because the parties may have relied on an alternative understanding of the possibly ambiguous wording of the class definition, and because notice has already been sent to persons detained during the period when the preliminary injunction was effective (September 13, 1982 to October 26, 1986), persons who have received and responded to notice to date will not be excluded from the class even though they were detained after September 13, 1982.[14]

There is no prejudice to defendants. They may move to exclude any class member who was not subjected to a strip search

---

**11.** The policy apparently followed by defendants since November 2, 1983, applies the "probable cause" standard rather than the less strict "reasonable suspicion" standard authorized by the Court in *Smith IV*. *See* Defendants' letter to Court dated August 3, 1987 at 2, and MCDC policy statement attached thereto.

**12.** Such an "open-ended" effect is appropriate in Rule 23(b)(2) class actions for injunctive or declaratory relief, but not where the Court's holding on the merits is necessarily bounded by the date of abandonment of the policy found unconstitutional. Plaintiffs have not presented the Court with evidence of defendants' non-compliance with the constitutional guidelines provided in *Smith IV*.

**13.** Unlike the coverage of Judge Jones's preliminary injunction, the class action does not pertain to persons detained at Montgomery County facilities other than MCDC.

**14.** *But see supra* note 9.

in violation of the standards required by the Fourth Amendment as outlined by the Court in *Smith IV*.[15] On the other hand, persons detained after October 28, 1983, are not precluded from filing suit for damages for a strip search in violation of the standards announced by this Court. They are merely excluded from participation in this class certified for retrospective damages. Defendants need not give additional notice. However, if counsel for any party is aware of, or before the close of discovery on December 4, 1987, becomes aware of, any person claiming such an illegal strip search, such persons may, upon petition to the Court, be included in the plaintiff class, provided that plaintiffs' counsel certifies that inclusion is warranted under law of the case.

## ORDER

In accordance with the attached Memorandum, it is this 9th day of October, 1987, by the United States District Court for the District of Maryland, ORDERED:

1. That plaintiffs' motion for additional notice BE, and the same IS, hereby DENIED;

2. That all persons listed in the Declaration of Plaintiffs' Counsel, and attachments thereto, except those listed in Exhibits D and E thereto, BE, and the same ARE, hereby INCLUDED IN THE PLAINTIFF CLASS.

---

**15.** Defendants retain the burden of proving "reasonable suspicion" as to any potential class member whom defendants may move to ex- clude from the class prior to trial on the damages issue. *See Smith IV,* 573 F.Supp. at 613–14.