**Vivian Anderson SMITH, et al.**

v.

**MONTGOMERY COUNTY, MARYLAND, et al.**

**Civ. No. Y–82–1323.**

United States District Court,
D. Maryland.

April 30, 1985.

---

Robert H. Symonds, Lanham, Md., Clausen Ely, Jr., Ellen J. Flannery, Arthur B. Spitzer and Elizabeth Symonds, Washington, D.C., for plaintiffs.

Carole A. Jeffries, Suzanne Levin, Silver Spring, Md., Robert G. Tobin and Jennifer Evans, Rockville, Md., for defendants.

## MEMORANDUM

JOSEPH H. YOUNG, District Judge.

## I. BACKGROUND

This case involves the constitutionality of the policy of conducting indiscriminate

---

strip searches, with or without probable cause, of all persons detained at the Montgomery County, Maryland Detention Center. The plaintiff, Vivian Smith, originally brought this action pursuant to 42 U.S.C. § 1983 on behalf of herself and purportedly as a representative of two classes of similarly situated persons alleging that the County Detention Center's policy of across the board strip searches violates the Fourth Amendment. Plaintiff and the class she currently represents[1] initially sought declaratory and injunctive relief and damages against defendants Paul McGuckian, County Attorney for Montgomery County; Charles Gilchrist, County Executive of Montgomery County; Gary Blake, Director of the Department of Correction and Rehabilitation of Montgomery County, Denise Dodson, a guard at the Center who conducted a strip search of the plaintiff; and Montgomery County. All individual defendants are being sued in both their individual and official capacities.

This case initially was assigned to Judge Jones, formerly of this District. In a Memorandum and Order dated September 17, 1982, Judge Jones summarized the relevant facts as follows:

Vivian Smith was arrested[2] at her home at about 10:00 p.m. on November 12, 1981 for contempt of court, in failing to appear in the Circuit Court for Montgomery County on October 28, 1981 in connection with a child support action originating in Essex County, New Jersey.[3] She was taken to the Rockville District police station, where she was photographed and an arrest report was filed. She was then taken, at about 11:40 p.m., to the Montgomery County Detention Center (MCDC), where she remained overnight. The next day she was transported to the Circuit Court for Montgomery County and, after some delay, appeared before a judge, who dismissed the charge against her.

Upon arriving at the detention center, plaintiff was taken to the women's receiving and discharge area, an open room approximately 15 feet by 20 feet containing a shower, desk, and one cell normally used as a holding cell. She was ordered to, and did, remove all her clothing. She then had to move her arms, open her mouth, bend over and squat, while a female correctional officer conducted a visual inspection of her body, including her oral, vaginal and anal cavities. This search took place in the presence of another female detainee, who was in the cell in the room. No weapon or contraband was found. Ms. Smith then showered and was placed in the holding cell with the other female detainee overnight.

*Smith v. Montgomery County*, 547 F.Supp. 592, 593–94 (D.Md.1982) (Jones, J., hereinafter "*Smith I*").

In the same Memorandum and Order, Judge Jones granted plaintiff's motion for a preliminary injunction which stated:

That defendants are enjoined during the pendency of this litigation, from permitting, promulgating a policy permitting,

---

1. Plaintiff's motion for class certification under Rule 23(b)(2) for injunctive relief eventually was denied by this Court in an Opinion and Order dated October 23, 1983. *Smith v. Montgomery County*, 573 F.Supp. 604, 615 (D.Md. 1983) (Young, D.J.). However, a class for damages was certified under Rule 23(b)(3) and was defined to include:

   All persons who were "temporary detainees" at the Montgomery County Detention Center since May 20, 1979 (the date the strip search policy became effective), and were strip searched absent probable cause to believe that they possessed either weapons or contraband. The term "temporary detainees" is defined to include all persons arrested and held for 24 hours or less.

   *Id.* (parenthetical added).

2. Ms. Smith was taken into custody by two officers of the Montgomery County Sheriff's Department on a civil body attachment issued to answer a contempt charge. Affidavit of James A. Young, Sheriff, ¶ 7 and Attachment A–2. She was arrested and booked on a charge of contempt. Affidavit of James A. Young, Sheriff, ¶ 10 and Attachment A–3. *Smith v. Montgomery County*, 547 F.Supp. 592, 593 n. 3 (D.Md.1982) (Jones, J.).

3. Smith had failed to appear because she believed, correctly as things eventually turned out, that the proceeding had been dismissed in New Jersey. *Smith*, 547 F.Supp. at 593 n. 4.

and enforcing the present policy permitting, a visual strip search of a temporary detainee at the Montgomery County Detention Center, as defined herein, except upon probable cause to believe such detainee has weapons or contraband concealed on his or her person. Defendants are likewise enjoined from permitting, promulgating a policy permitting, and enforcing the present policy to the extent that it permits the conducting of visual searches other than in private.

*Smith I*, 547 F.Supp. at 599.

Thereafter, plaintiff filed a motion for partial summary judgment seeking a declaration that the Center's strip search policy is unconstitutional and an order permanently enjoining defendants from strip searching short-term detainees absent probable cause to believe that they are concealing weapons or contraband and from strip searching short-term detainees other than in private. This motion for partial summary judgment was denied by this Court in a subsequent Memorandum Opinion and Order, *Smith v. Montgomery County*, 573 F.Supp. 604, 614 (D.Md.1983) (Young, J.) (hereinafter *"Smith II"*), because the plaintiff lacked standing to receive either declaratory, *id.*, at 607–609 (citing *Golden v. Zwickler*, 394 U.S. 103, 89 S.Ct. 956, 22 L.Ed.2d 113 (1969), or injunctive relief. *Smith II*, 573 F.Supp. 607–609 (citing *Los Angeles v. Lyons*, 461 U.S. 95, 103 S.Ct. 1660, 1665, 75 L.Ed.2d 675 (1983); *Rizzo v. Goode*, 423 U.S. 362, 96 S.Ct. 598, 46 L.Ed.2d 561 (1976); *O'Shea v. Littleton*,

414 U.S. 488, 94 S.Ct. 669, 38 L.Ed.2d 674 (1974)). Accordingly, this Court dissolved the preliminary injunction against the defendants and declared plaintiff's motion for compliance with the preliminary injunction moot. *Smith II*, 573 F.Supp. at 609.

While this Court refused to grant plaintiffs permanent injunctive relief, it did, nonetheless, concur with Judge Jones' determination that *Logan v. Shealy*,[4] 660 F.2d 1007 (4th Cir.1981), is controlling on the merits of this case and consequently that the strip search policy at the Montgomery County Detention Center is unconstitutional. *Smith II*, 573 F.Supp. at 609–10. The Court noted, in certain terms, that:

> [when] squarely faced with the issue of the constitutionality of the Center's indiscriminate strip search policy and failure to conduct strip searches in private ..., the Court holds that, based on *Logan*, the Center's indiscriminate strip search policy and failure to conduct strip searches in private is unconstitutional.

Defendants subsequently have moved, pursuant to Rule 60(b) of the Federal Rules of Civil Procedure,[5] for this Court to reconsider its determination that the Montgomery County Detention Center's across the board strip search policy is unconstitutional in light of *Hudson v. Palmer*, — U.S. ——, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984) and *Block v. Rutherford*, — U.S. ——, 104 S.Ct. 3227, 82 L.Ed.2d 438 (1984), two recently decided Supreme Court cases. Defendants also seek summary judgment in

---

**4.** In *Logan*, a DWI arrestee sought damages and injunctive and declaratory relief for having been strip searched at the Arlington County, Virginia Detention Center pursuant to a policy which required that all persons being held at the center be strip searched for weapons or contraband regardless of the offense, the circumstances or probable duration of their detention. *Logan*, 660 F.2d at 1010. The Fourth Circuit held that this strip search policy promulgated by the Sheriff's Department was unconstitutional under the standards enunciated by the Supreme Court in *Bell v. Wolfish*, 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979), and that the plaintiff's strip search "bore no discernable relationship to security needs at the Detention Center that, when balanced against the ultimate inva-

sion of personal rights involved, it could reasonably [be] thought justified." 660 F.2d at 1013.

**5.** Defendants have based their motion for reconsideration on Rule 60(b) of the Federal Rules of Civil Procedure. However, Rule 60(b) applies only to a final judgment or order, *see* Rule 60(b), Fed.R.Civ.P. (relief "from a final judgment, order, or proceeding"); Advisory Committee Notes, 1946 Amendment, and the Fourth Circuit has already determined that this Court's decision was an interlocutory order. *Smith v. Montgomery County*, 740 F.2d 963 (4th Cir. 1984). Nonetheless, the Court will exercise it's inherent power to reconsider it's prior interlocutory ruling and will resolve defendants' motion on it's merits.

their favor and an award of costs based on *Hudson*. However, the Court finds that *Hudson* does not require the reversal or modification of its prior holding that the detention center's strip search policy is unconstitutional and, thus, defendants' request for relief from this holding and summary judgment in their favor will be denied.

## II. DISCUSSION

Defendants contend specifically that this Court's prior holding is erroneous because "[i]n two recent cases, the Supreme Court of the United States examined the parameters of the Fourth Amendment rights of persons incarcerated in the nation's prisons and held that none exist." [6] In the Court's view, this is neither a correct characterization of the Supreme Court's recent decisions nor is it a correct statement of prior Fourth Amendment law.

*A.*

In *Hudson*, the Supreme Court dealt directly with the question of whether a "shakedown" search of an inmate's cell violated the Fourth Amendment protection against unreasonable searches and seizures. The Court held that it did not and "that the Fourth Amendment has no applicability *to* a prison *cell*." 104 S.Ct. at 3205 (emphasis added). This holding comports with the Supreme Court's prior indication that a prisoner may not have had a reasonable expectation of privacy in his cell, *Bell v. Wolfish*, 441 U.S. 520, 556–57, 99 S.Ct. 1861, 1883–84, 60 L.Ed.2d 447 (1979), but it does not follow therefrom that the prisoner is unprotected from unreasonable invasions of his or her personal privacy.[7] In *Wolf-*

ish, the Supreme Court expressly permitted irregular and unannounced shakedown searches. The Court acknowledged the plausibility of the argument that "a person confined in a detention facility has no reasonable expectation of privacy *with respect* to his *room* or *cell* ..." 441 U.S. at 556–57, 99 S.Ct. at 1883 (emphasis added). Clearly, this proposition recognized by the Court in *Wolfish* and the holding in *Hudson* applies to the search of a prisoner's papers, effects, and property located in the cell and not to the most intimate searches of the inmate's person. *Id.; see Hudson*, 104 S.Ct. at 3200–3201 and n. 8; 104 S.Ct. at 3216 n. 31 (Stevens, J., dissenting opinion joined by Brennan, Marshall, and Blackman, JJ.). *Hudson* does not eviscerate the requirement articulated by the Supreme Court in *Wolfish* that personal body searches of inmates be reasonable under the circumstances and therefore provides no basis for defendants' conclusion that the Fourth Amendment is ineffective in preventing unreasonable searches of a prisoner's person. *Id.* 104 S.Ct. at 3216 n. 31.

Although the Supreme Court held that the Fourth Amendment protections do not extend to a prisoner's property, it did not hold that prisoners have no constitutional rights. The Court explicitly acknowledged that prisoners retain a variety of express rights guaranteed under the Constitution, including the right of due process, *Hudson*, 104 S.Ct. at 3198 (citing *Wolff v. McDonnell*, 418 U.S. 539, 555, 94 S.Ct. 2963, 2974, 41 L.Ed.2d 935 (1974)) and the Eighth Amendment guarantee that they not be subject to "cruel and unusual punish-

---

**6.** Defendant's Memorandum at 1.

**7.** Indeed, defendants' argument to the contrary proves too much, and if applied vigorously could have so undiscriminating an appetite for justifying the exercise of excessive and intrusive executive and police power and authority, that it could readily consume well established notions of privacy in Anglo-American law. There are many *places* in which an individual may not enjoy a legitimate expectation of privacy and where his *property* may not be insulated from search and seizure, *see, e.g., United States v. Salvucci*, 448 U.S. 83, 95, 100 S.Ct. 2547, 2554,

65 L.Ed.2d 619 (1979) (case remanded to determine if defendant had a legitimate expectation of privacy in apartment belonging to his mother); *Rakas v. Illinois*, 439 U.S. 128, 149, 99 S.Ct. 421, 433, 58 L.Ed.2d 387 (1978) (passenger had no legitimate expectation of privacy in car driven by owner). However, it does not follow therefrom that an individual's mere presence in these areas suspends Fourth Amendment protections entirely and subjects them to unreasonable searches of their physical person without constitutional recourse.

ments." 104 S.Ct. at 3198. More significantly, the Court also reaffirmed the principles it announced in *Wolfish* where, *inter alia*, it applied a balancing test to determine whether strip searches of inmates and pre-trial detainees were unreasonable in light of the circumstances and therefore violative of the Fourth Amendment.[8] Thus, defendants have incorrectly characterized *Hudson* as holding that inmates and pre-trial detainees [9]—or temporary detainees as in this case—retain no Fourth Amendment protection against unreasonable strip and body cavity searches.

B.

Defendants have similarly misconstrued *Block v. Rutherford*, —— U.S. ——, 104 S.Ct. 3227, 82 L.Ed.2d 438 (1984). In *Block*, the Supreme Court, consistent with its holdings in *Hudson* and *Wolfish*, upheld the Los Angeles County Jail practice of conducting random, irregular "shakedown" searches of cells. The Court found that this practice did not violate the Fourteenth Amendment. 104 S.Ct. at 3229. Moreover, *Block* did not overrule the balancing test applied or the reasonableness requirement announced in *Wolfish*. The Court in *Block* simply did not engage in a Fourth Amendment analysis because plaintiffs' claim of a right to observe from a distance shakedown searches of their cells was brought under the due process clause of the Four-

teenth Amendment. *See* 104 S.Ct. at 3235. In the instant case, plaintiffs' claim of unconstitutional strip searches must be analyzed under the Fourth Amendment balancing test of *Wolfish*. Finally, the Supreme Court noted with some emphasis in *Block* that the detainees involved there had been denied bail pending trial and therefore would not be released before trial.[10] *See id.* 104 S.Ct. at 3228, 3221, 3222. In contrast, the instant case involves "temporary detainees" who are held at the Montgomery County Detention Center for 24 hours or less, during which time they will have an opportunity to post bail, and, if not released beforehand will have their first appearance before a judge.[11]

Consequently, neither *Hudson* or *Block* provide any basis for setting aside this Court's prior decision that the Montgomery County Detention Center's policy of conducting indiscriminate and nonprivate strip searches is unconstitutional. Instead, these recent decisions reaffirm the principles of *Wolfish* which were construed and applied by the Fourth Circuit in *Logan*, 660 F.2d at 1107, 1013 and followed by this Court in both *Smith I*, 547 F.Supp. at 598 and *Smith II*, 573 F.Supp. at 609–610. Thus, the Fourth Circuit's use of the balancing test prescribed by the Supreme Court in reaching its determination that an indiscriminate strip search policy applied to temporary detainees is unconstitutional,

---

**8.** In *Wolfish*, the Court reasoned that:
The test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application. In each case it requires a balancing of the need for the particular search against the invasion of personal rights that the search entails. Courts must consider the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted. [citations omitted].
441 U.S. at 559, 99 S.Ct. at 1884.

**9.** The plaintiff in *Hudson* was a convicted prisoner at a state prison and not a pre-trial or temporary detainee.

**10.** Defendants contend that all arrestees taken to the Montgomery County Detention Center are "pre-trial detainees" in that they are "committed to the detention facility only because no less

drastic means can reasonably assure [their] presence at trial." Defendants' Memorandum, at 8 (quoting *Wolfish*); *but see* Plaintiff's Memorandum at 6–7 ("temporary detainees" are distinguishable from pre-trial detainees in that they have not yet had a full opportunity to post bond and secure their release, and there has been no determination by a judge that they must be committed to the detention center pending trial).

**11.** Many persons taken to the county detention facility were released within a few hours of their arrival but were nonetheless subjected to an intrusive strip search. Plaintiff's Memorandum in Opposition to Defendants' Motion to Reconsider ("Plaintiffs' Memo.") at 4 n. 4. (citing as example the deposition of defendant Gary Blake, Montgomery County Director of the Department of Corrections and Rehabilitation).

*Logan,* 660 F.2d at 1013,[12] remains good law[13] and controls the resolution of the instant case.

Finally, defendants contend that the county detention center's policy of conducting across the board strip searches of all detainees is constitutional because temporary detainees are intermingled with the general population of convicted inmates and pre-trial detainees and because information from other jurisdictions indicates that such searches have revealed weapons and contraband. Nonetheless, the Court finds that in light of the record now before it, these contentions do not justify the center's indiscriminate strip search policy and this policy is, therefore, unconstitutional. *See Logan,* 660 F.2d at 1013.

An indiscriminate strip search policy routinely applied to detainees such as the named plaintiff here and all other detainees "cannot be constitutionally justified simply on the basis of administrative ease in attending to security considerations." *Id.* (citing *Tinetti v. Wittke,* 479 F.Supp. 486, 490–91 (E.D.Wisc.1979), *aff'd,* 620 F.2d 160 (7th Cir.1980)). In determining whether such policies are reasonable in light of the significant governmental interest in main-

taining security and order within a correctional facility or detention center, courts must remain mindful that such considerations are primarily within the province and professional expertise of corrections officials. *Cf. Wolfish,* 441 U.S. at 554–55, 99 S.Ct. at 1882–83; *Jones v. North Carolina Prisoners' Labor Union,* 433 U.S. 119, 97 S.Ct. 2532, 53 L.Ed.2d 629 (1977); *Pell v. Procunier,* 417 U.S. 817, 827, 94 S.Ct. 2800, 2806, 41 L.Ed.2d 495 (1974) (these cases deal with an assessment of the reasonableness of various institutional policies and restrictions under the due process clause). However, where there is substantial evidence in the record which indicates that officials have exaggerated their response to legitimate institutional concerns, courts need not defer to their judgment. *See Wolfish,* 441 U.S. at 540–541 n. 23, 99 S.Ct. at 1874–1875 n. 23 (quoting *Pell,* 417 U.S. at 827, 94 S.Ct. at 2806).

As the record in this case sufficiently demonstrates, newly arrived detainees, both male and female, are housed in areas that are physically separate from the housing areas for the general population.[14] Although the existing administrative practice in the women's section of the Montgomery

**12.** In applying its dispositive Fourth Amendment analysis, the *Logan* court noted specifically that the strip search of the plaintiff, who like the named plaintiff here was a temporary detainee, had no "discernable relationship to security needs at the Detention Center that, when balanced against the ultimate invasion of personal rights involved, ... [could justify it]." 660 F.2d at 1013.

**13.** In addition to the recent Supreme Court decisions in *Hudson* and *Block* which this Court views as having substantiated the validity of the Fourth Amendment analysis employed by the Fourth Circuit in *Logan,* there is further indication that *Logan* was correctly decided. This Court noted in *Smith II* that;

Justice Rehnquist in his capacity as Circuit Justice, in staying the Fourth Circuit's mandate in *Logan* stated that *Logan* was incorrectly decided. *Clements v. Logan,* 454 U.S. 1304 [102 S.Ct. 284, 70 L.Ed.2d 461] (1981). However, the alacrity with which the full Supreme Court vacated the stay entered by Justice Rehnquist is strong indication that the full Court believes that *Logan* was correctly decided. *Clements v. Logan,* 454 U.S. 1117 [102

S.Ct. 961, 71 L.Ed.2d 105] (1981) (stay vacated two days after it was imposed). *Smith II,* 573 F.Supp. at 610 n. 5.

**14.** Newly arrived female detainees are held in one of three intake cells designated for that purpose. Plaintiff's Memorandum at 7; Stipulation of Facts ¶ 20. These three intake cells are on one side of a hall in the intake area and are separated from other cells used to house pre-trial detainees and sentenced inmates by a locked gate and sally port. Plaintiffs' Memorandum at 8; *see* deposition of defendant Denise Dodson, pp. 75–83. Thus, cells used to house newly arrived detainees are physically separate from those set aside for pre-trial detainees and sentenced inmates. Additionally, this cell block area is physically separate from the dormitory area that houses pre-trial detainees and sentenced inmates. Plaintiffs' Memorandum at 8. Newly arriving male detainees are held in an "intake section" that is far removed from the cell blocks that house the general jail population. Stipulation of Facts ¶ 20. Both male and female temporary detainees may also be held in holding cells which are themselves separate from the general intake section itself. Plaintiffs' Memorandum at 8.

County facility is such that a temporary detainee may have some limited access to the general population during meals or early morning hours before the temporary detainee is taken to court, this access may easily be eliminated by leaving the temporary detainees in their cells. *See* Dodson Deposition, pp. 77–78. Moreover, the fact that weapons or contraband might sometimes be found during strip searches of pre-trial detainees or convicted inmates does not justify an indiscriminate strip search policy that includes strip searches of temporary detainees. Indeed, other local jurisdictions have successfully implemented policies which prohibit strip searches of temporary detainees in the absence of probable cause.[15]

These considerations inevitably lead this Court to conclude that, like *Logan*, the indiscriminate strip searches of temporary detainees bear no reasonable relationship to security needs at the detention facility that, when balanced against the "ultimate invasion of personal rights involved," would justify it. *Logan*, 660 F.2d at 1013. Additionally, the recent decisions of the Supreme Court in *Hudson* and *Block* do not vitiate the Fourth Amendment analysis utilized by the Court of Appeals in *Logan* nor do they demand reversal of this Court's prior determination in this matter.

---

**15.** Most recently strip searches of temporary detainees have been prohibited by court order and local ordinance in Prince George's County. *Alexander v. Prince George's County*, Law No. 95, 517 (Prince George's County Cir.Ct. Jan. 26, 1983). The District of Columbia has also entered into a judicially supervised agreement which bars strip searches of temporary detainees except upon probable cause. *Morgan v. Barry*, Civ. No. 81–1419 (D.C. July 22, 1981); and Arlington County, Virginia, whose strip search policy was held to be unconstitutional in *Logan*, has limited strip searches to those instances where there is probable cause.