JOHN DOES 1–100, on Behalf of them-
selves and all others similarly
situated, Plaintiffs,

v.

Dave NINNEMAN, Sheriff of Chisago
County, Minnesota, et al.,
Defendants.

Civ. No. 3–84–573.

United States District Court,
D. Minnesota,
Third Division.

July 8, 1985.

Barry G. Reed, and Charles S. Zimmer-
man, Zimmerman, Caplan & Reed, Minne-
apolis, Minn., for plaintiffs.

Joseph B. Marshall, Marshall & Associ-
ates, Circle Pines, Minn. and Terry Votel,
Reding & Votel, St. Paul, Minn., for de-
fendants.

## MEMORANDUM AND ORDER

DEVITT, District Judge.

The issue here, validity of Chisago Coun-
ty's strip search policy as applied to these
plaintiffs, was heard and argued on June
24, 1985, on the parties' cross motions for
summary judgment and plaintiff's motion
for class certification. As discussed more
fully below, we hold that plaintiffs' motion
for partial summary judgment against
Chisago County is GRANTED on the
grounds that its strip search policy, as ap-
plied to these two male plaintiffs, was un-
reasonable within the meaning of the
Fourth Amendment; the individual defend-
ants' motion for partial summary judgment
on the basis of immunity is GRANTED as
to their immunity from damages; and the
parties' motions are DENIED in all other
respects.

The essential facts are uncontroverted.
One plaintiff, a resident of the county, was

arrested in April of 1984 at 10:30 P.M. on a civil bench warrant issued for his failure to appear at a hearing relating to child support. The other plaintiff, a resident of Hennepin County, was stopped by Minnesota State Highway Patrol officers in July of 1980 while driving through Chisago County on his way to Duluth, Minnesota. He was arrested and charged with driving after revocation of his driver's license.

Both plaintiffs were taken to the Chisago County Jail where they were ordered to empty their pockets, were fingerprinted and then strip searched in accordance with the county's policy and procedure. They were issued institutional clothing and a bedroll and placed in separate cells within the general jail population.

Chisago County Sheriff Dave Ninneman instituted a written strip search policy in 1982 applicable to detention in the Chisago County Detention Center, continuing a policy previously in effect. The county concedes the strip searches of both plaintiffs were conducted in accordance with county policy, requiring that "all persons, without exception," who are to be placed in the general jail population, remove their clothes, shower, and then submit to a "complete visual search" that includes bending over to allow visual inspection of the rectal and genital areas. Detainees are then issued institutional clothing and their street clothes are searched by jail personnel for drugs, weapons or other contraband. Ninneman Affidavit, Clerk's Entry # 20 at 3.

The county's policy requires strip searching be performed by persons of the same gender, without verbal communication or conduct of a derogatory nature. The jailer gives oral directions to a detainee relating to proper positioning for visual inspection. Strip searches are conducted in relative privacy in that only the jailer and detainee are present, and no touching of the detainee is allowed unless necessary to perform the search or otherwise for control. Ninneman Affidavit, *id.* at 4. The indiscriminate strip search policy applies only to male detainees because females are not housed in the Chisago County Jail. Females are subjected to strip searching at the jail on an individualized basis: if the individual is suspected of harboring drugs or weapons.

Sheriff Ninneman ordered his subordinates to comply with the policy "under pain of discipline or termination" to assure the security of the detainees and the jail personnel while preserving the dignity of the person searched and the individual conducting the search. Ninneman Affidavit, *id.* at 3. The parties concede, and the facts presented suggest, that county officials complied with the strip search policy in conducting the strip searches of the two male plaintiffs. There are no allegations that the two plaintiffs were treated in a disrespectful or derogatory manner.

Defendants do not dispute the indiscriminate nature of the strip search policy but contend it is justified as the most effective means of detecting drugs, weapons and other contraband. Therefore, it is necessary to assure the security of the jail and safety of the detainees and jail staff. Defendants also contend that an indiscriminate policy is necessary to avoid charges of discrimination and to minimize their potential liability in the event an inmate injures another.

Plaintiffs claim strip searching is excessive and therefore is constitutionally unreasonable when performed on temporary pretrial detainees arrested on minor charges unrelated to drugs or weapons and whose detention was not anticipated. Additionally, they contend that security can be maintained in a less intrusive manner by separating such pretrial detainees from the general jail population, using a metal detector and continuing the county's use of frisk or pat-down searches of detainees.

The Supreme Court in *Bell v. Wolfish,* 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979), held that warrantless visual strip searches conducted on less than probable cause were not *per se* unconstitutional if a balancing of the institution's security interests with the privacy interests of the inmates tipped in favor of the institution.

The test of reasonableness under the Fourth Amendment is not capable of pre-

cise definition or mechanical application. In each case it requires a balancing of the need for the particular search against the invasion of personal rights that the search entails. Courts must consider the *scope* of the particular intrusion, the *manner* in which it is conducted, the *justification* for initiating it, and the *place* in which it is conducted.

*Bell v. Wolfish, id.,* 441 U.S. at 560, 99 S.Ct. at 1884 (emphasis added).

*Bell* involved strip searching of pretrial detainees following their contact with visitors. The Court held such searches were justified on the basis of security:

> A detention facility is a unique place fraught with serious security dangers. Smuggling of money, drugs, weapons, and other contraband is all too common an occurrence. And inmate attempts to secrete these items into the facility by concealing them in body cavities are documented in this record ... and in other cases.

*Id.,* 441 U.S. at 560, 99 S.Ct. at 1884. Although only one instance of attempted smuggling by a detainee after meeting with a visitor was discovered by a strip search, the Court surmised that strip searching may act as an effective deterrent. *Id.*

The Supreme Court has not addressed the constitutionality of strip searching pretrial detainees since *Bell.* The closest case authority in this circuit involved strip searches of *visitors* to prison inmates, *Hunter v. Auger,* 672 F.2d 668 (8th Cir. 1982), in which the Court of Appeals held such strip searches unconstitutional absent a reasonable suspicion that a particular visitor is attempting to smuggle contraband by secreting it on his person. *Id.,* at 674–75. Discussing the balance of an institution's need for security with an individual's right of privacy, the *Hunter* court stated:

> prison officials are not unlimited in ferreting out contraband. Certainly, as has been observed, one's anatomy is draped with constitutional protection. [Citation omitted.] And the state's interest must be balanced against the significant invasion of privacy occasioned by a strip

search. Indeed, a strip search, regardless how professionally and courteously conducted, is an embarrassing and humiliating experience. [citations omitted].

*Hunter v. Auger, id.,* 672 F.2d at 674.

Courts of Appeals for the Fourth, Seventh, Ninth and Tenth Circuits have utilized the Supreme Court's balancing test set forth in *Bell v. Wolfish* to strike down strip search policies involving pretrial detainees charged with minor offenses. *E.g., Hill v. Bogans,* 735 F.2d 391 (10th Cir. 1984); *Giles v. Ackerman,* 746 F.2d 614 (9th Cir.1984), *cert. denied,* — U.S. —, 105 S.Ct. 2114, 85 L.Ed.2d 479 (1985); *Mary Beth G. v. City of Chicago,* 723 F.2d 1263 (7th Cir.1983); *Logan v. Shealy,* 660 F.2d 1007 (4th Cir.1981); *Tinetti v. Wittke,* 479 F.Supp. 486 (E.D.Wisc.1979), *aff'd,* 620 F.2d 160 (7th Cir.1980).

We have considered Chisago County's security concerns in relation to those two male plaintiffs and conclude the scope of the searches exceeded the demonstrated need. The county failed to establish that plaintiffs, or similar pretrial detainees, constituted a real security risk. No reasonable suspicion existed that plaintiffs harbored contraband on their bodies and no showing was made, beyond remote possibility, that these men were concealing drugs or weapons in their rectal or genital areas. Further, the unanticipated nature of their detention belies the rationality of the county's asserted deterrent effect of strip searching. *Giles v. Ackerman, supra,* 746 F.2d at 617.

Plaintiffs were arrested on minor offenses unrelated to drugs, weapons or predatory conduct. Their temporary detention was unplanned and no reasons were articulated concerning appearance, demeanor or past criminal history to suggest that they might have been concealing contraband in their anal or genital areas nor was the jail's physical capacity for separating pretrial detainees asserted as a possible justification for searches of such an extraordinary scope. *Cf. Smith v. Montgomery County,* 547 F.Supp. 592, 598–99 (D.Md.1982) (intermingling of temporary detainees was limited and available).

■ Our own Court of Appeals stated that strip searches involving visual inspection of anal and genital areas constitute a "significant invasion of privacy" and are inherently "embarrassing and humiliating experiences." *Hunter v. Auger, supra,* 672 F.2d at 674. Although *Hunter* dealt only with the strip search of prison visitors, we are guided by that court's reasoned analysis in reaching our conclusion that the Constitution mandates a reasonable suspicion standard governing searches involving visual examination of anal and genital areas of temporary detainees charged with minor offenses. *See Hunter v. Auger, id.,* 672 at 674. Jail officials must articulate specific objective facts and rational inferences to be drawn therefrom, and suspicion must be individualized—"directed to the person who is targeted for the strip search"—to justify a search of such scope. *Id.,* 672 F.2d at 674-75.

■ Having balanced the county's security concerns against plaintiffs' privacy interests, we find the scope of the strip searches of these two plaintiffs unjustified and, therefore, constitutionally unreasonable under the Fourth Amendment. Accordingly, we declare Chisago County's strip search policy unconstitutional as applied to these two plaintiffs.

Plaintiffs' motion for partial summary judgment against Chisago County is granted as to the county's liability. Issues of damages and injunctive relief remain but we note the Court of Appeals' award in *Hunter* of no more than nominal damages. *Id.,* 672 F.2d at 677.

■ Claiming immunity, the individual defendants move for summary judgment. We hold they are immune from assessment of damages under *Harlow v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982), because their conduct in this case did not violate any clearly established statutory or constitutional right of which a reasonable person would have been aware. We decline to grant, on this limited record, the county commissioners' motion for absolute immunity under *Monell v. New York Department of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).

Finally, plaintiffs' motion for an order certifying a class action in this case under Fed.R.Civ.P. 23 is denied for the nonce.

### ORDER

Based on the foregoing analysis, the arguments and written memoranda of counsel, and the files, records and proceedings in this case,

IT IS ORDERED that

1. plaintiffs' motion for partial summary judgment is GRANTED against Chisago County because the strip searches of these two male plaintiffs violated their Fourth Amendment rights; issues of damages, if any, and injunctive relief remain;

2. we declare Chisago County's strip search policy unconstitutional as applied to these two plaintiffs;

3. The individual defendants' motion for partial summary judgment on the grounds of immunity is GRANTED such that they are immune from assessment of damages;

4. plaintiffs' motion for certification of a class is DENIED for the nonce.