**Vivian Anderson SMITH, et al.**

v.

**MONTGOMERY COUNTY, MARYLAND, et al.**

**Civ. No. Y–82–1323.**

United States District Court, D. Maryland.

Sept. 8, 1986.

Robert H. Symonds, Lanham, Md., Clausen Ely, Jr., Ellen J. Flannery, Arthur B. Spitzer, Elizabeth Symonds, Washington, D.C., and Edward L. Genn, Rockville, Md., for plaintiffs.

Carole A. Jeffries, Silver Spring, Md., and Robert G. Tobin, Rockville, Md., for defendants.

## MEMORANDUM

JOSEPH H. YOUNG, District Judge.

On November 12, 1981, at approximately 10:00 p.m., two officers of the Montgomery County Sheriff's Department arrested plaintiff Vivian Smith at her home for failing to appear before the Circuit Court for Montgomery County in a child support action. The officers took Smith to the Rockville District police station, and then to the Montgomery County Detention Center ("MCDC"). Upon Smith's arrival at MCDC, a female correctional officer took Smith into a holding cell, where in the presence of another female inmate, the officer ordered Smith to remove her clothing, which was searched, and to squat for a visual body cavity ("vbc") search. Ms. Smith then showered and was placed in the holding cell overnight. A magistrate dismissed the charge against her the next day.

Smith brought this suit against Montgomery County and several of its officials under 42 U.S.C. § 1983, claiming that the Detention Center's policy of strip searching all temporary detainees was unconstitutional. She sought declaratory and injunctive relief and damages for past constitutional violations, both for herself and for persons similarly situated. In a Memorandum and Order dated September 17, 1982, Judge Jones of this Court found MCDC's indiscriminate strip search policy unconstitutional, and issued a preliminary injunction which stated:

> Defendants will be enjoined from permitting, promulgating a policy permitting, or enforcing a policy permitting the visual strip search of a temporary detainee ... except upon probable cause to believe such detainee has weapons or contraband concealed on his or her person and from permitting, promulgating a policy permitting or enforcing a policy permitting the conducting of such searches other than in private.

*Smith v. Montgomery County*, 547 F.Supp. 592, 599 (D.Md.1982) (Smith I).

After Judge Jones' resignation, this case was re-assigned. In a Memorandum and Order dated October 26, 1983, the Court dissolved the preliminary injunction and denied declaratory relief because plaintiff did not have standing to challenge the prospective application of Montgomery County's strip search policy. However, the Court granted Ms. Smith's motion for certification of a retrospective damages class. The class was defined as:

> All persons who were 'temporary detainees' at the Montgomery County Deten-

tion Center ("MCDC") since May 20, 1979 [the date Montgomery County adopted the strip search policy], and were strip searched absent probable cause to believe that they possessed either weapons or contraband. The term 'temporary detainees' is defined to include all persons arrested and held for 24 hours or less. *Smith v. Montgomery County*, 573 F.Supp. 604, 611 (D.Md.1983) (Smith II).

The Fourth Circuit subsequently dismissed defendants' appeal from the Court's October 1983 order for lack of appellate jurisdiction. *Smith v. Montgomery County*, 740 F.2d 963 (4th Cir.1984) (unpublished opinion). Defendants moved this Court to reconsider its determination that the strip search policy was unconstitutional, and the Court denied that motion in a Memorandum and Order dated April 30, 1985. *Smith v. Montgomery County*, 607 F.Supp. 1303 (D.Md.1985) (Smith III).

Defendants have obtained addresses through the Motor Vehicle Administrations of Maryland, Virginia, and the District of Columbia for persons detained less than 24 hours at MCDC from May 20, 1979 until Judge Jones issued the original injunction in this case and mailed notice to these potential class members, giving them the opportunity to "opt in" to the class. Counsel for the defendants persist in their assertions that the strip search policy is constitutional, and have argued that probable cause existed to strip search every person who has opted in to the class. The Court must set some broad guidelines and procedures to determine membership in the class.

To begin, *Smith II* followed Judge Jones' initial determination that the defendants required probable cause to strip search temporary detainees. *See Smith II*, 573 F.Supp. at 609, n. 4; *Smith I*, 547 F.Supp. at 596, n. 9. However, in light of the Supreme Court's recent emphasis on deference to jail administrators, *see Hudson v. Palmer*, 468 U.S. 517, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984); *Block v. Rutherford*, 468 U.S. 576, 104 S.Ct. 3227, 82 L.Ed.2d 438 (1984), and the unanimous developments in this area in the lower federal courts, this

Court will adopt a reasonable suspicion standard and redefine the class as follows:

All persons who were temporary detainees at the Montgomery County Detention Center since May 20, 1979, and were strip searched absent a reasonable suspicion that they possessed either weapons or contraband. The term temporary detainee is defined to include all persons arrested and held for 24 hours or less.

*See Bell v. Wolfish*, 441 U.S. 520, 560, 99 S.Ct. 1861, 1885, 60 L.Ed.2d 447 (1979); *Stewart v. Lubbock County, Texas*, 767 F.2d 153, 155 n. 3 (5th Cir.1985), *cert. denied*, —— U.S. ——, 106 S.Ct. 1378, 89 L.Ed.2d 604 (1986); *Giles v. Ackerman*, 746 F.2d 614, 615 (9th Cir.1984), *cert. denied*, 471 U.S. 1053, 105 S.Ct. 2114, 85 L.Ed.2d 479 (1985); *Mary Beth G. v. City of Chicago*, 723 F.2d 1263, 1273 (7th Cir. 1983); *Hunter v. Auger*, 672 F.2d 668, 674 (8th Cir.1982) (visitors to penal institutions); *Fann v. City of Cleveland, Ohio*, 616 F.Supp. 305, 312–13 (N.D.Ohio 1985); *Kathriner v. City of Overland, Missouri*, 602 F.Supp. 124, 125 (E.D.Mo.1984); *Hunt v. Polk County, Iowa*, 551 F.Supp. 339, 345 (S.D.Iowa 1982); *Simenc v. Sheriff of DuPage County*, Westlaw slip op. at p. 5, No. 82–C–4778 (N.D.Ill., Dec. 9, 1985) [Available on WESTLAW, DCTU database]; *see also Blackburn v. Snow*, 771 F.2d 556 and cases listed at 565 (1st Cir.1985); *but cf. Tinetti v. Wittke*, 479 F.Supp. 486, 491 (E.D.Wisc.1979), *aff'd*, 620 F.2d 160 (7th Cir.1980) (probable cause required to strip search non-misdemeanor traffic offenders).

Articulating the reasonable suspicion standard is easier than applying it. In the context of this class action lawsuit, the Court must draw bright lines according to the offenses that class members were arrested for, or embroil itself in hundreds of individual evidentiary disputes. And bright lines are necessary to guide the future decisions of jail personnel, who cannot be expected to ponder the niceties of Fourth Amendment law every time they admit a potentially dangerous inmate into their facilities.

At first blush, categorizing temporary detainees according to the offenses they

were arrested for may appear philosophically at odds with the presumption of innocence. Recent arrestees have not been convicted of the crimes for which they are being held,[1] and many are housed overnight before a magistrate has had the opportunity to determine if probable cause existed for their arrests. But however necessary the presumption of innocence may be in the courtroom to protect defendants from arbitrary government actions, it does not prevent jail personnel from protecting themselves against violent defendants. Recent arrestees at MCDC are thrown into a stressful, and often desperate situation; a police officer or a magistrate has previously determined that probable cause exists to believe they have already committed one crime.

> It is no answer, of course, that we deal here with restrictions on pretrial detainees rather than convicted criminals. For, as we observed in *Wolfish*, in this context, "[t]here is no basis for concluding that pretrial detainees pose any lesser security risk than convicted inmates." 441 U.S. at 546, n. 28 [99 S.Ct. at 1878 n. 28]. Indeed, we said, "it may be that in certain circumstances [detainees] present a greater risk to jail security and order." *Ibid.*

*Block v. Rutherford*, 468 U.S. 576, 104 S.Ct. 3227, 3233, 82 L.Ed.2d 438 (1984) (other citations omitted).

Determining reasonable suspicion based upon broad categories of criminal charges may also appear at odds with traditional Fourth Amendment jurisprudence requiring individualized suspicion. Of course, individualized suspicion often means that the individual has followed a pattern of behav-

ior characteristic of a broad class of persons engaged in similar criminal activity. And a police officer's determination of probable cause to believe that a detainee has already committed a serious crime is sufficient to raise a reasonable suspicion that the detainee is hiding weapons or contraband, especially in light of the government's compelling interest in maintaining safety in jail security.

To determine whether a jail administrator's suspicion and subsequent decision to strip search a temporary detainee was reasonable, the Court must balance the "intrusion on the [detainee's] Fourth Amendment interest against [the] promotion of legitimate governmental interests." *Delaware v. Prouse*, 440 U.S. 648, 654, 99 S.Ct. 1391, 1396, 59 L.Ed.2d 660 (1979). In weighing that balance, the courts have consistently recognized that the general threats posed by classes of offenders in the jail context may outweigh an individual detainee's Fourth Amendment interests. *See Bell v. Wolfish, supra*, 441 U.S. at 559, 99 S.Ct. at 1884 ("A detention facility is a unique place fraught with serious security dangers. Smuggling of money, drugs, weapons, and other contraband is all too common an occurrence."); *Giles v. Ackerman*, 746 F.2d 614, 617 (9th Cir.1984), *cert. denied*, 471 U.S. 1053, 105 S.Ct. 2114, 85 L.Ed.2d 479 (1985) ("the County has not demonstrated that its security interests warrant the serious invasion of privacy inflicted by its policy"—implicitly recognizing class versus individualized suspicion analysis); *Mary Beth G. v. City of Chicago*, 723 F.2d 1263, 1273 (7th Cir.1983) (same); *Jeffries v. Reed*, 631 F.Supp. 1212, 1216–17 (E.D.Wash.1986)

---

**1.** Some members of the class of temporary detainees have been convicted. They are housed in the Montgomery County Detention Center pending court appearances, or are in transit between other jail facilities. Strip searching those members of the class is justified because of their contacts with the outside world, *see Bell v. Wolfish, supra*, 441 U.S. at 558–60, 99 S.Ct. at 1884–85; *Simenc v. Sheriff of DuPage County*, No. 82–C–4778 (N.D.Ill.1985) Westlaw memo. op. at 5, and the need to deter planned smuggling of weapons and contraband during outside contacts. *Wolfish, supra*, 441 U.S. at 558, 99

S.Ct. at 1884; *cf. Mary Beth G. v. City of Chicago*, 723 F.2d 1263, 1272 n. 8 (7th Cir.1983); *John Does 1–100 v. Boyd*, 613 F.Supp. 1514, 1523 n. 13 (D.Minn.1985); *John Does 1–100 v. Ninneman*, 612 F.Supp. 1069, 1071 (D.Minn.1985); *Hunt v. Polk County, Iowa*, 551 F.Supp. 339, 344 (S.D. Iowa 1982) (all holding that strip searches of detainees recently arrested on minor charges were unconstitutional, partly because arrests are unforeseen events and it would be unlikely for arrestees to plan to smuggle contraband; *contra Weber v. Dell*, 630 F.Supp. 255, 261 (W.D. N.Y.1986).

(Denying constitutional challenge to practice of strip searching death row inmates every time they left their cells—"Death row inmates present particular and heightened security risks."); *Simenc v. Sheriff of DuPage County*, Westlaw memo. op. at p. 5, No. 82–C–4778 (N.D.Ill. Dec. 9, 1985) (Denying defendants' motion for summary judgment in case challenging strip searches of traffic offenders and misdemeanants, requiring individualized reasonable suspicion of strip searches "unless authorities can demonstrate that misdemeanants regularly present a threat to jail security.").

This "blanket risk" approach implicit in the Fourth Amendment balancing test makes particular sense in the jail context because of the magnitude of risks involved. *See John Does 1–100 v. Boyd*, 613 F.Supp. 1514, 1523, n. 13 (D.Minn.1985) (testimony of one incident where a minor offender on work release had smuggled a gun to a major offender in a detention center); *Logan v. Shealy*, 500 F.Supp. 502, 505 (E.D. Va.1980), *rev'd in part*, 660 F.2d 1007 (4th Cir.1981), *cert. denied*, 455 U.S. 942, 102 S.Ct. 1435, 71 L.Ed.2d 653 (1982) ("the Sheriff of Arlington County adopted the [across the board strip search] policy in 1974–75 (after one of his deputies had been shot by a misdemeanant who had not been strip searched) ...").

On the other side of the Fourth Amendment balance, strip searches are a particularly strong and offensive dose of preventive medicine. Strip searches have been described as "demeaning, dehumanizing, undignified, humiliating, terrifying, unpleasant, embarrassing, repulsive, signifying degradation and submission...." *Tinetti v. Wittke*, 479 F.Supp. 486, 491 (E.D. Wisc.1979), *aff'd*, 620 F.2d 160 (7th Cir. 1980), *quoting Sala v. County of Suffolk*, (E.D.N.Y. 11/28/78) (unpublished opinion). One commentator described them as "vis-

ual rape." Shuldiner, Visual Rape: A Look at the Dubious Legality of Strip Searches, 13 J.Marsh.L.Rev. 273 (1980). And strip searches often appear strikingly inappropriate in individual cases.[2]

In the end, balancing this serious intrusion against the government's compelling interest in jail security is unsusceptible of precise evidentiary resolution, undiscernible in the language of the Constitution or the intent of its framers. But the Court has the duty to draw the line somewhere. The Court holds that reasonable suspicion exists to strip search all felony arrestees, and all temporary detainees arrested for misdemeanor offenses that involve weapons or contraband. Reasonable suspicion also exists to strip search all temporary detainees with prior records of convictions or unresolved arrests for felony offenses, or for misdemeanors involving weapons or contraband.

Other federal courts appear to have uniformly drawn the line in the same place. The courts have upheld strip searches of detainees arrested on serious charges, or charges involving weapons or contraband. *See United States v. Duncan*, 586 F.Supp. 1305, 1311 (W.D.Mi.1984), *aff'd*, 763 F.2d 220 (6th Cir.1985) ("[D]efendant was arrested by state authorities some time after he had allegedly delivered a quantity of drugs to an undercover informant.... [T]he search of defendant's person at the county jail did not violate the Fourth Amendment."); *Lusby v. T.G. & Y. Stores, Inc.*, 749 F.2d 1423, 1433–34 (10th Cir. 1984), *vacated on other grounds*, — U.S. ——, 106 S.Ct. 40, 88 L.Ed.2d 33 (1985) (Finding no constitutional violation in strip search of plaintiffs: "A strip search is not improper when a suspect is going to be placed in the general jail population and

---

**2.** It is troubling to consider how much of our visceral reactions to strip searches, pro and con, may rest upon perceptions of class and sex. *See Dufrin v. Spreen*, 712 F.2d 1084, 1088 (6th Cir. 1983): "In directing a verdict for Dufrin, the trial judge observed that he did not like the idea of police routing 'middle-class housewives' out of their beds 'at 11:30 at night' and forcing those

housewives to submit to strip-searches.... We cannot believe from these comments that the trial court was implying that a different rule ought to exist for a female who was not middle-class, or who was not a housewife, or who was not from the suburbs. Any suggestion [otherwise] is in our view neither legally nor morally supportable."

has been charged with a drug offense such as possession of marijuana," *citing Hill v. Bogans,* 735 F.2d 391, 394 (10th Cir.1984)); *Dufrin v. Spreen,* 712 F.2d 1084 (6th Cir. 1983) (Finding no constitutional violation in strip search of woman charged with assaulting her stepdaughter with a broom handle); *cf. Salinas v. Breier,* 695 F.2d 1073 (7th Cir.1982) (No constitutional violation in strip searches of wife and four children of suspected heroin dealer where court assumed probable cause existed for dealer's arrest and drugs had not yet been found); *Alberts v. City of New York,* 549 F.Supp. 227, 229, n. 1 (S.D.N.Y.1982) (Refusing to allow plaintiff arrested on charges of resisting arrest, a class A misdemeanor punishable with imprisonment up to one year, to amend complaint to include a claim of an unconstitutional strip search; indicating that this cause of action would be fruitless because of serious nature of charges).

On the other hand, the courts have found that strip searches of detainees arrested on minor offenses violate the Fourth Amendment. *See Ward v. County of San Diego,* 783 F.2d 1385 (9th Cir.1986); *as modified June 16, 1986* (refusal to sign promise to appear); *Jones v. Edwards,* 770 F.2d 739 (8th Cir.1985) (failure to sign summons for leash law violation); *Stewart v. Lubbock County, Texas,* 767 F.2d 153 (5th Cir.1985), *cert. denied,* —— U.S. ——, 106 S.Ct. 1378, 89 L.Ed.2d 604 (1986) (one plaintiff arrested for public intoxication, one for a bad check offense); *Levka v. City of Chicago,* 748 F.2d 421 (7th Cir.1984) (motion in limine as to nature of offense granted, but court indicated that it was a misdemeanor); *Giles v. Ackerman,* 746 F.2d 614 (9th Cir. 1984), *cert. denied,* 471 U.S. 1053, 105 S.Ct. 2114, 85 L.Ed.2d 479 (1985) (driving with an expired automobile registration and accumulated parking tickets); *Hill v. Bogans,* 735 F.2d 391 (10th Cir.1984) (driving with expired automobile inspection sticker and old, invalid warrant for failure to appear on speeding charge); *Mary Beth G. v. City of Chicago,* 723 F.2d 1263 (7th Cir.1983) (two plaintiffs were traffic violators arrested for outstanding parking tickets; one violator

brought in for failure to produce driver's license; one plaintiff charged with disorderly conduct); *Tinetti v. Wittke,* 479 F.Supp. 486 (E.D.Wisc.1979), *aff'd,* 620 F.2d 160 (7th Cir.1980) (speeding, failure to post cash bond); *Sala v. County of Suffolk,* 604 F.Supp. 207 (2d Cir.1979), *vacated on other grounds,* 446 U.S. 903, 100 S.Ct. 1827, 64 L.Ed.2d 256 (1980) (harassment and failure to appear); *Fann v. City of Cleveland, Ohio,* 616 F.Supp. 305 (D.Ohio 1985) (disobeying traffic signal and operating vehicle without license plates); *John Does 1–100 v. Ninneman,* 612 F.Supp. 1069 (D.Minn.1985) (one plaintiff arrested for failure to appear at child support hearing, another for driving after revocation of license); *John Does 1–100 v. Boyd,* 613 F.Supp. 1514 (D.Minn.1985) (one plaintiff arrested for careless driving; another for drunk driving; another for disorderly conduct and disturbing the peace in a domestic dispute; another for driving while under the influence); *Kathriner v. City of Overland, Missouri,* 602 F.Supp. 124, 125 (E.D. Mo.1984) (court does not identify offense, but holding limited to proposition that the city "may not strip search those persons charged only with misdemeanors or ordinance violations unless there is reasonable cause to believe that such detainees possess weapons or contraband,"); *Bovey v. City of Lafayette, Indiana,* 586 F.Supp. 1460 (N.D.Ind.1984) (speeding, resisting law enforcement, assault and battery on a policeman, and disorderly conduct); *Hunt v. Polk County, Iowa,* 551 F.Supp. 339 (S.D.Iowa 1982) (speeding and outstanding misdemeanor warrant); *Travis v. City of Joliet,* No. 84–C–3837 (N.D.Ill. Sept. 23, 1985) [Available on WESTLAW, DCTU database] (routine traffic stop); *cf. Simenc v. Sheriff of DuPage County,* No. 82–C–4778 (N.D.Ill. Dec. 9, 1985) (trespass to land, obstructing a police officer, and two counts of battery; the other plaintiff arrested for trespass to land and obstructing a police officer—court denied motion to dismiss); *DiMattesa v. Davies,* Nos. 85–3426, 85–3427 (E.D.Pa. Nov. 22, 1985) (two plaintiffs arrested for prostitution, court denied motion to dismiss); *but see Weber v. Dell,* 630

F.Supp. 255 (W.D.N.Y.) (upholding strip search policy applied to all arrestees).

Finding constitutional violations in strip search policies, courts have emphasized that their holdings were limited to detainees arrested for minor offenses, and courts interpreting those decisions have emphasized the same limitation. *See Ward v. County of San Diego,* 783 F.2d 1385, 1388, 1389 (9th Cir.1986), *as modified June 16, 1986* ("no published state or federal case since [1966] ... upholds the constitutionality of a blanket policy of strip searches of minor offense arrestees.... In *Giles [v. Ackerman, supra],* we established that strip searches of arrestees for a minor offense are unconstitutional absent individualized suspicion that such arrestee is carrying or concealing contraband or is suffering from a communicable disease"); *Jones v. Edwards,* 770 F.2d 739, 741, 741–42 (8th Cir.1985) (describing *Mary Beth G., supra, Hill v. Bogans, supra,* and *John Does 1–100 v. Ninneman, supra,* as "cases considering the application of the *Bell [v. Wolfish, supra]* test to detainees charged with misdemeanors.... [Plaintiff] was not charged with resisting arrest or with any sort of public misconduct which might justify a more intrusive search"); *Stewart v. Lubbock County, Texas,* 767 F.2d 153, 156 (5th Cir.1985), *cert. denied,* — U.S. —, 106 S.Ct. 1378, 89 L.Ed.2d 604 (1986) (reading *Mary Beth G., supra,* and *Logan v. Shealy,* 660 F.2d 1007 (4th Cir.1981), *cert. denied,* 455 U.S. 942, 102 S.Ct. 1435, 71 L.Ed.2d 653 (1982), as applying to minor offenders; "Because Lubbock County's strip search policy was applied to minor offenders awaiting bond when no reasonable suspicion existed that they as a category of offenders or individually might possess weapons or contraband, under the balancing test of *Wolfish* we find such searches unreasonable...."); *Giles v. Ackerman,* 746 F.2d 614–18 (9th Cir.1984), *cert. denied,* 471 U.S. 1053, 105 S.Ct. 2114, 85 L.Ed.2d 479 (1985) ("We hold that arrestees for minor offenses may be subjected to a strip search only if jail officials have a reasonable suspicion that the particular arrestee is carrying or concealing contraband or suffering from a communicable disease.... Distinguishing *Bell v. Wolfish:* "The inmates in *Bell* were charged with offenses more serious than minor traffic violations"); *Hill v. Bogans,* 735 F.2d 391, 394–95 (10th Cir.1984) ("A jail's desire to maintain security, to avoid charges of discriminatory treatment, and to promote administrative convenience simply does not justify routine strip searches in a public area of persons detained for minor traffic offenses"); *Mary Beth G. v. City of Chicago, supra,* ("Although a detention center may be a place 'fraught with serious security dangers,' *Bell v. Wolfish,* 441 U.S. at 559, 99 S.Ct. at 1884, the evidence does not support the view that those dangers are created by women minor offenders entering the lockups for short periods while awaiting bail"); *Tinetti v. Wittke,* 479 F.Supp. 486, 491 (E.D.Wisc.1979), *aff'd,* 620 F.2d 160 (7th Cir.1980) (Broad injunction against strip search policy limited to nonmisdemeanor traffic offenders—"Unlike pretrial detainees charged with a criminal offense, there is little reason to suspect that traffic violators will conceal contraband or weapons, particularly when they are incarcerated solely due to their inability to post cash bail;" *see also,* Shuldiner, Visual Rape: A Look at the Dubious Legality of Strip Searches, 13 J.Marsh.L.Rev. 273, 274 (1980), noting that *Tinetti* was "expressly limited to non-misdemeanor traffic offenders"); *Fann v. City of Cleveland, Ohio,* 616 F.Supp. 305, 312–13 (D.Ohio 1985) (reading *Dufrin v. Spreen, supra,* as turning on the felony offense involved there, and reading *Mary Beth G., supra, Hill v. Bogans, supra, Sala v. County of Suffolk, supra, Tinetti, supra, Logan v. Shealy, supra, Giles v. Ackerman, supra,* as turning on minor offenses: "Because the record indicates that Fann was strip-searched following arrest for minor offenses and that no police officer possessed any reasonable suspicion that she was carrying or concealing contraband, her Fourth and Fourteenth Amendment rights were violated" (footnote omitted)); *John Does 1–100 v. Boyd,* 613 F.Supp. 1514,

1517, 1524 (D.Minn.1985) ("This case involves only those charged with having committed misdemeanors and lesser offenses." Reading *Giles, Hill v. Bogans, Mary Beth G., Logan,* and *Tinetti:* "In each of these decisions, the plaintiff was arrested for a traffic or other minor offense, and was strip searched pursuant to a uniform policy. In each case, the court held that such a search, conducted without reference to the nature of the offense or any reasonable grounds to believe that the individual possessed contraband, violated the fourth amendment"); *John Does 1–100 v. Ninneman,* 612 F.Supp. 1069, 1071–72 (D.Minn. 1985) (reading other cases "to strike down strip search policies involving pretrial detainees charged with minor offenses.... Plaintiffs were arrested on minor offenses unrelated to drugs, weapons, or predatory conduct.... [T]he Constitution mandates a reasonable suspicion standard governing searches involving visual examination of anal and genital areas of temporary detainees charged with minor offenses"); *Kathriner v. City of Overland, Missouri,* 602 F.Supp. 124, 125 (E.D.Mo.1984) (the city "may not strip search those persons charged only with misdemeanors or ordinance violations unless there is reasonable cause to believe that such detainees possess weapons or contraband"); *Hunt v. Polk County, Iowa,* 551 F.Supp. 339, 342 (S.D.Iowa 1982) (Court notes that the plaintiff's constitutional challenge to the defendant's strip search policy was limited to "the practice of strip and visual body cavity search of *temporary pre-arraignment* detainees charged with *minor offenses*" (emphasis added by court)); *Alberts v. City of New York,* 549 F.Supp. 227, 229, n. 2. (S.D.N.Y.1982) (distinguishing *Sala* and *Tinetti* because they involved misdemeanor offenses); *Simenc v. Sheriff of DuPage County,* Westlaw, memo. op. at p. 5, No. 82–C–4778 (N.D.Ill. Dec. 9, 1985) ("[W]hen an arrestee is being detained briefly awaiting the posting of bond on a traffic or misdemeanor offense, generally a strip search can be made only on reasonable suspicion that the arrestee is carrying or concealing a weapon or contraband, unless authorities can demonstrate that misdemeanants regularly present a threat to jail security").

The caselaw reveals that at least two state legislatures have drawn the line in the same place. *See Mary Beth G., supra,* at 1266, n. 2. ("[T]he disclosure of the strip search policy of [Chicago] moved the Illinois legislature to amend the Illinois statute governing 'Rights on Arrest' to prohibit strip searches of persons for traffic, regulatory, or misdemeanor offenses absent a reasonable belief that the arrestee is concealing weapons or controlled substances on his or her person. Ill.Rev.Stat. ch. 38, § 103–1(c) (eff. Sept. 2, 1979)"); *Hill v. Bogans, supra,* at 393, n. 1 (citing recent Colorado statute banning strip searches of traffic or petty offenders absent reasonable belief that they are concealing weapons or drugs).

Other courts have held that a detainee's prior record is relevant. *See Giles v. Ackerman, supra,* 746 F.2d at 617 ("Reasonable suspicion may be based on such factors as the nature of the offense, the arrestee's appearance and conduct, and the prior arrest record"); *Hunter v. Auger,* 672 F.2d 668, 671 (8th Cir.1982); *Weber v. Dell,* 630 F.Supp. 255, 257 (W.D.N.Y.1986); *John Does 1–100 v. Boyd, supra,* at 1525 (Reasonable suspicion "could be based on the nature of the offense, the detainee's criminal history, the demeanor of the individual, and the results of any other search ... which the defendants may choose to conduct"); *John Does 1–100 v. Ninneman, supra,* at 1071; *Simenc v. Sheriff of DuPage County, supra,* at 8 ("Reasonable suspicion to believe that an individual arrestee may be concealing a weapon or contraband may be based on factors such as appearance and conduct of the arrestee, and any prior arrest record").

The Court also believes that drawing the line at felonies and misdemeanor charges associated with weapons or contraband is consistent with the leading Fourth Circuit case in this area, *Logan v. Shealy,* 660 F.2d 1007 (4th Cir.1981), *cert. denied,* 455 U.S. 942, 102 S.Ct. 1435, 71 L.Ed.2d 653 (1982).

In *Logan,* the Fourth Circuit held unconstitutional a strip search of a woman arrested for driving while intoxicated, a misdemeanor punishable by imprisonment up to six months. The Fourth Circuit wrote at 1013:

Logan's strip search bore no ... discernible relationship to security needs at the Detention Center that, when balanced against the ultimate invasion of personal rights involved, it could reasonably be thought justified. At no time would Logan or similar detainees be intermingled with the general jail population; her offense, though not a minor traffic offense, was nevertheless one not commonly associated by its very nature with the possession of weapons or contraband; there was no cause in her specific case to believe that she might possess either; and when strip-searched, she had been at the Detention Center for one and one-half hours without even a pat-down search. An indiscriminate strip search policy routinely applied to detainees such as Logan along with all other detainees cannot be constitutionally justified simply on the basis of administrative ease in attending to security considerations.

*Logan*'s statement about offenses associated "by [their] very nature with the possession of weapons or contraband" lends clear support to this Court's decision that reasonable suspicion exists to strip search detainees arrested for misdemeanors involving weapons or contraband. And while many felonies do not "by [their] very nature involve weapons or contraband," the Court does not read that sentence from the *Logan* opinion as an unalterable requirement that would apply to serious offenses as well. Other courts have read the reasoning of *Logan* as limited to minor offenses. *See Jones v. Edwards, supra,* at 741; *Giles v. Ackerman, supra,* at 618–19; *Dufrin v. Spreen, supra,* at 1087 ("It is not necessary for us to determine whether *Tinetti* and *Logan* were correctly decided," distinguishing both cases because they involve minor offenses while Dufrin was arrested for felonious assault); *Hunt v. Polk County, Iowa, supra,* at 343–44 (Difference in results of cases upholding searches and cases like *Logan* holding searches unconstitutional "is based largely on a difference in the degree of likelihood that the persons to be searched would be concealing contraband.... "[T]here is little reason to suspect that newly-arrested traffic violators are concealing contraband or weapons"); *see also* descriptions of *Stewart, supra; Fann, supra;* and *John Does 1–100 v. Boyd, supra,* at pp. 441–42 above.

■ Accordingly, the Court will leave it to the parties to determine which members of the class of temporary detainees were strip searched in violation of their Fourth Amendment rights under the terms of the Court's ruling. If defendants believe that they had individualized grounds for a reasonable belief that a detainee arrested for a minor offense was concealing weapons or contraband, the defendants shall submit a written statement of those individualized reasons to the Court. If any of those statements of reasonable suspicion create issues of fact, brief evidentiary hearings may be necessary.

For all members of the class whose Fourth Amendment rights were violated, the Court will enter an award of nominal damages in the amount of $200. The Court believes that its ruling will deter defendants from future violations, and thus fully vindicate the interests of the class. *See Hunter v. Auger,* 672 F.2d 668, 677 (8th Cir.1982); *John Does 1–100 v. Boyd, supra,* at 1531; *John Does 1–100 v. Ninneman* at 1072; *Safley v. Turner,* 586 F.Supp. 589, 597 (W.D.Mo.1984).

As the prevailing party and representative of the class in this civil rights suit, plaintiff is entitled to an award of reasonable attorney's fees.